### 7567

### STATE v. JONES.

1. ELECTION—QUASHING INDICTMENT.—Where an indictment charges the same offense in two counts growing out of the same transaction, the prosecution should not be required to elect upon which count it will proceed, nor should the indictment be quashed for indefiniteness.

2. EVIDENCE.—In homicide case, after evidence tending to show defendant was near and watching deceased, acts of deceased toward third person are competent.

3. IBID.—HEARSAY.—Trial Judge having cautioned witness not to state any facts not within her knowledge, it is not error to fail to strike out answer of witness apparently hearsay elicited by appellant, he making no motion to strike out.

4. IBID.—Acts of the Judge here complained of as submitting to jury relevancy of evidence, *held* to instruct jury not to consider the evidence complained of unless the Judge should afterwards instruct them to do so, after showing of relevancy, to be determined by the Court.

5. MALICE may be inferred from brutal acts of defendant toward deceased beginning some time before and continuing to within a short time of the homicide.

6. MURDER—SUICIDE.—One persuading another to commit suicide and aiding, counselling and abetting him in the commission by furnishing the means or putting the means within reach with the intention of bringing about a condition of mind where the person would naturally attempt to commit such act, is guilty of murder.

2—86

7. VERDICTS.—CHARGE here is not subject to the objection that it instructed jury they *must* find one of four verdicts.

8. IBID.—JURY.—It is held there is no coercion here on part of Judge in urging jury to find a verdict nor any intimation that he thought they should find against defendant.

9. CHARGE.—Statement by the Court that he would again charge the jury at the risk of making a slip as to the law and other like expressions, *held* not to refer to the jury and not to have influenced them to reach a verdict by disregarding minor things.

10. IBID.—Illustration of rule as to circumstantial evidence by reference to and analysis of case of *State* v. *Hayes, held* not to be a charge on the facts.

11. NEW TRIAL—JURORS.—Motion for new trial based on affidavit as to declarations of juror before trial, hostile to defendant, not served on juror or prosecuting officer, will not be considered.

12. REHEARING refused.

Before MEMMINGER, J., Union, Spring Term, 1909. Affirmed.

Indictment against W. T. Jones for murder. The trial Judge instructed the jury as follows:

"In this case of the *State* v. *W. T. Jones*, who is under this indictment charged with murder you have heard all of the testimony which has been offered in evidence, you have had the benefit of argument of counsel, which is always helpful, and which in this case has been particularly able and instructive.

"Now it but remains for me as the presiding Judge, to carry out the provision of the Constitution that says that the Judge shall not charge the jury in respect to the facts of the case, but shall charge to them the law.

"Under this indictment the charge of murder is made, the defendant, W. T. Jones, is charged with the killing or murdering of his wife. There are two counts in the indictment, the first count charges the killing by the administering of poison, to wit, strychnine, and the second count being a general charge not specifying the drug used. I

charge you that the question which you have for considera-
tion is under the first count of the indictment as stated by
one of the counsel for the State. It is for you to say
whether it has been proved to your satisfaction, beyond a
reasonable doubt that this defendant, W. T. Jones, did kill
and murder his wife by administering and causing to be
administered strychnine, confine your inquiry to that and
not to any general matters alleged or set out in the second
count of the indictment.

"In order for you to arrive at a conclusion upon the evi-
dence, I charge you as a principle of law that every man
is presumed to be innocent until he is proven guilty beyond
a reasonable doubt, that he is presumed to be innocent of
any charge against him until he is proved guilty to the sat-
isfaction of the jury, beyond a reasonable doubt. A man so
accused has the right to stand mute and say nothing, and
counsel for the State has not even the right to comment
on the fact that he did not give his testimony, that he did not
go on the witness stand and testify in his own case, and if
anything has been said by any of counsel for the State that
would warrant you in concluding, or lead you to conclude
that you would be warranted in considering it against the
defendant,—the fact that he has not testified in the case,—
you disabuse yourself of that, for that can not be considered
against the defendant, the law does not allow that to be
commented on, and does not allow any inference to be
drawn from it, against the defendant.

"I charge you that where a man pleads not guilty, gener-
ally that that puts in issue and denies the whole case made
against him, on behalf of the State, leaving the burden on
the State to prove his guilt beyond a reasonable doubt.
The charge here is murder, the statutory definition of that
I will give you. It is the killing of a human being with
malice aforethought, either expressed or implied, there
can be no murder without malice, malice express or implied.
Malice means hatred, hostility or ill will, evil intent or dis-

position, and it may be shown by threats, lying in wait, shooting from ambush, or in some such manner, some express evidence of malice, or it may be implied from brutal conduct on the part of the person committing the crime, such brutality as would show a total disregard of human life, such conduct from which the law implies a malicious heart, a heart totally devoid of social duty, and fatally bent on mischief. That is what the law means by malice, and that malice must be aforethought, that does not mean that it must be concealed in the man's heart for any great length of time, it may be conceived in a moment of time, but you must be satisfied that it did exist, that it was aforethought before you can find that the killing was murder.

"The next crime in degree, where a killing is charged, is manslaughter. That is defined under our statute to be any unlawful killing, without malice aforethought, either express or implied, as a killing in sudden heat and passion, that is what manslaughter is.

"Now under the question of evidence, generally there are two kinds of evidence by which facts may be proven, direct evidence, the testimony of witnesses testifying to things coming under their actual observation and which you accept as true or not by whether you believe the witness who testifies to the facts, you may not believe the testimony of a witness even though he be not contradicted, when you have direct testimony on a point in issue, you either find for or against it according to whether or not you believe the witness who testifies to the point.

"Circumstantial evidence is the other kind of evidence, that is where you have a point in issue to decide and no one testifies that it came under his observation, but where the proof of attendant circumstances is relied on. I will give you the technical definition. You can readily see that in many cases unless the law admitted circumstantial evidence as sufficient proof of facts in issue that there would be many cases of crime, such as stealing for instance, where

there would be very little possibility of any one seeing the thing done, and you would have to rely entirely on circumstances, and so the law does allow you to rely on those circumstances and find the party committing the crime guilty on circumstantial evidence, provided it measures up to the required standard.

"The rule as laid down for circumstantial evidence is this: The evidence of more facts than one, which in combination create the presumption that still another fact exists, the test of the sufficiency of this evidence is that the facts which the jury accept as proved can be reasonably accounted for on no hypothesis which excludes the defendant's guilt, that with the theory of his guilt they are harmonious and consistent, and that they point to it so clearly and distinctly as to satisfy the jury of it beyond a reasonable doubt.

"I charge you that the State, in order to prove a man guilty, under a charge of murder, must prove that the defendant killed the deceased, that the death of the deceased was brought about by the act of the defendant, that the defendant did the killing.

"It is charged here in this indictment that this defendant killed the deceased by administering poison to the deceased, now I charge you, gentlemen, that the administering of poison, even though not done by a direct act of the defendant, that is even though he does not administer it by his own hand to the deceased, yet still if it was administered by putting the deceased in such fear as to persuade and induce her to take the poison, then that would be as much an administering of the poison by the defendant as if he had administered it to her by his own hand, and I charge you that if the deceased came to her death by suicide, by her own hand, that if the State has not satisfied you beyond a reasonable doubt that she did not commit suicide, that the deceased did not come to her death by her own hand, then you can not convict this defendant under this indictment, with this one limitation: In order for one who incites to suicide to be

guilty of murder, a casual connection must exist between the incitement and the suicide, the incitement must be, not necessarily the sole cause, but an inducing cause of the crime. Provided this connection is established I charge you that it is the law that the inciter is as truly responsible for the act, and therefore as truly a murderer, as though he had prevailed upon a third person to commit the homicide. A human being is dead as the consequence of his deliberate act, and it would be a reproach to the law if he could escape punishment by electing to bring about the death by the victim's own hand rather than by the hand of a third party. If he employs a third person, the interposition of the will of the third person will not render him less guilty, why then should the interposition of the victim's will. I charge you that as the law, that if a man persuades another to commit suicide, and aids, counsels, and abets him in the commission of the act, by furnishing the means, or putting the means within reach, with the intention of bringing about a condition of mind where the person would naturally attempt to commit such act, where the person would seek such means, and placed such means in the way, so that the person when aroused to that state of mind by his deliberate act, would attempt to commit suicide, then that would be for the jury to say whether that was such participation in the suicide. I will give you an illustration: Where there were two men confined in jail, one under sentence of death, to be hanged, the other prisoner persuaded him to commit suicide and so to evade being hanged, and aided him in preparing the rope with which he hanged himself, aided him, counselled him and furnished him the means whereby he committed the act, that man was held to be guilty of murder, and that is the law in this State.

"Now, upon the law of accidental killing, when a man is charged with killing another and a question fairly arises out of the evidence as to whether the death of the deceased was a criminal act or whether it was accidental death, that

was caused by an accident to the person deceased, or an act on his own part, that is if you were to suppose a case where a person is charged with administering poison to another, unless you are satisfied beyond a reasonable doubt that deceased did not take the poison by mistake, and that the defendant did not administer the poison by mistake, if it was really an accidental death, resulting from a mistake, then you would have to find the defendant not guilty, because the law says that the State must satisfy you beyond a reasonable doubt that the killing was not an accident, accident must be negatived by the State. So if you have a reasonable doubt as to whether or not the death of the deceased was accidental, you have to solve that doubt in favor of the defendant.

"Now the principle of the reasonable doubt remains to be charged to you. That upon the whole inquiry, upon any material point, if you have any reasonable doubt, you have to give the benefit of that doubt if you have any reasonable doubt upon any material point in the case, any material point in your inquiry, you will solve that doubt in favor of the prisoner. That don't mean, gentlemen, any sort of vague fanciful doubt that you may have, it has been defined by our Supreme Court to be a real doubt, a substantial doubt, arising out of the testimony, a doubt for which you can give a reason.

"If under that indictment you find that the defendant is guilty of murder, you will write guilty, which means that he must suffer death by hanging, or you may find a verdict of guilty, with recommendation to the mercy of the Court, which means imprisonment in the State penitentiary for the balance of his natural life. Or you may find him guilty of manslaughter, which means imprisonment from two to thirty years, or if you decide that the State has failed to make out a case, beyond a reasonable doubt, if you have a reasonable doubt as to whether or not the defendant is guilty, you will solve that doubt in favor of the defendant

and write not guilty, and that means that he will go hence without any punishment whatever.

"That covers the case, gentlemen. Take the record and find your verdict. When you reach your verdict, and you must arrive at one of them, the foreman will write it on this indictment and sign his name as foreman with the date."

## SUPPLEMENTAL CHARGE.

"His Honor: You may bring the jury out, Mr. Sheriff.

"Mr. Foreman, you have failed to agree upon a verdict?

"Mr. Foreman: Yes, sir.

"His Honor: State whether your differences are upon the facts of the case or upon the law of the case?

"Mr. Foreman: Upon the facts.

"His Honor: I have called you out and had you brought out, Mr. Foreman and gentlemen, to urge upon you the importance of reaching a verdict in the case we are now considering. You have been engaged in the case ever since Wednesday afternoon and have had it under actual consideration, under the charge of the Judge ever since nine o'clock last night, and I want to impress upon you, gentlemen, that you should reach an agreement in the case. The whole testimony is before you, the law of the case has been explained to you and you ought to realize that an immense amount of labor and of talent has been employed in presenting the case to you, and you have it as fairly before you as any jury could have it and there is no reason why you should not be able to decide it. These mistrials ought not to occur, the county is at a great expense in trying the case, and you ought, if possible, reach some conclusion in the matter. Of course, while that is an element that you ought not to consider when a human life is at stake, still you ought to try and reach a verdict. Some one has to do it—some twelve men sitting where you are have to decide this matter—and you don't want it said that you could not agree, that you were brought here and this trial gone through with, the case

presented to you and you could not decide it some way. You don't want to shift your responsibility upon some one else. Some twelve men have to decide the case and it is not a fair thing to do to want to shift the responsibility of deciding the case on some one else by holding out a great length of time and getting the Judge to order a mistrial. I know it is a very hard matter sometimes to decide questions of fact. I know that from my own experience, because I have to decide a great many of them on the equity side of the Court. I know it is hard, and I sympathize with you, gentlemen, but because it is hard is no reason why you should dodge it, I would not want to dodge a case and throw it upon my successor, and I would not want it said that I shirked my responsibility, and I think you, gentlemen, ought to feel that way about it.

"Now, as to the law of the case, I tried to explain that to you on yesterday, but it might be that if I went over some of the points involved in the case I might be able to assist you in arriving at a conclusion, and that I want to do, and I will do so at the risk that I might make some little slip in stating to you the law of the case. You know how important it is to me for every word that I say and every ruling that I make goes down in the record, and if I make any mistake, if in the opinion of the Supreme Court I make any mistake, that causes a reversal of the trial, and I have to be particularly careful in a hotly contested case such as this is, not to fall into any apparent error of law, still I want to aid you, gentlemen, if possible, with the law of the case, though it is a very limited capacity that a Judge has, that the law gives him, he can not state to you anything of the facts; he can not convey to you anything of what his opinion on the facts is, and if you have any idea that the Judge has formed any opinion, you want to dismiss that from your minds, disabuse your minds of that, for the Judge can only give you the principles of law involved in the case, and is not allowed to express any opinion as to the facts. I have told

you the law of murder, what are the necessary elements, the killing of a human being with malice aforethought, express or implied. Manslaughter, the unlawful killing of a human being without malice aforethought express or implied, as you take for example, if a man does some unlawful act and does not intend to kill any one and death results, that would be manslaughter. As if a man struck another with a stick, not intending to kill him but merely to make him suffer, to hurt him, and nevertheless death resulted from the blow, that would be manslaughter. Or if a man administered a dose of poison to a person not intending to kill the person to whom it was administered but merely to cause him to suffer, if death resulted, that would be manslaughter, doing an unlawful act but not with the intent to kill, that is what you would call involuntary manslaughter.

"I might charge you, gentlemen, more fully on the subject of circumstantial evidence. As I have explained to you, gentlemen, when you have to decide a fact and the proof of the fact depends on circumstantial evidence the law is that the circumstances must point to the truth of that fact to the exclusion of any other reasonable theory, except that that fact is true. It may be that I can help you to understand that better if I give you a specific case. I will go over a case which happened here in our own State, where a man by the name of Hoyt Hayes was accused of killing his wife up in Oconee county. It seems from the record of the case which I have read that the story which was told by this man was that he was waked up in the night by his wife, who was in a delicate condition and was about to be delivered of a child, and who had expressed great despair and alarm about what might be the result of giving birth to the child, he said that he was waked in the middle of the night by his wife who told him that there was a noise going on about the cattle pen and that he had better investigate it, but that he went out there and while he was gone he

heard the explosion of a gun and that when he came back
into the house he looked into the room where his wife had
been left and saw her dead with her head blown all to
pieces from a double barrelled shot gun which was lying
at her side, he immediately went to get his neighbors, he ran
considerable distance of two or three miles and got some one
whom he knew to go with him, leaving his wife there as he
found her without making any further investigation as to
whether she were dead or not, having seen his wife there
on the bed with the weapon at her hand, when he came
back with his neighbor they went in there and found her
dead with the gun beside her, and the theory was advanced
that she had committed suicide. As soon as the neighbors
came in, before anything was disturbed, they found the
gun lying by the side of the woman and an iron poker by
the gun and on top of the bed by her hand; the theory was
that she had lain in bed and put the gun along side of her
head with the barrel at her head and had pulled the trigger
with this piece of iron and blown her head all to pieces so
that her brains were scattered all over the bed around her;
that was the theory that was relied upon by the defence to
establish suicide, and in addition to that was produced a
note claimed to be in her handwriting in which she stated
that she had intended to kill herself and that her husband
had always been kind to her; those were some of the cir-
cumstances of the case and here was one of them, that
while the gun was lying along side of her with the barrel at
her head and the piece of iron by her side, yet both of her
hands were under the cover, and the State relied on that to
prove that it was impossible for her to have committed sui-
cide, because there was a fixed fact absolutely inconsistent
with the theory of suicide, how could she have pulled the
trigger of the gun and blown her head off and then put her
hands underneath the cover, there was one theory inconsis-
tent with the woman having committed suicide; there were
other circumstances of suspicion in the case, for instance,

the note, it was testified that as soon as the first person came that Hayes ushered him into the room and stated to him that his wife must have committed suicide, must have killed herself, as soon as that person came into the house, instead of taking him into the room where his wife was lying he invited him to a seat in another room, in the front room and when the man was about to take his seat on a chair he called his attention to a book that was lying on the chair, and when the man offered to take another chair he told him no, just to move the book, and when he moved the book out dropped this note purporting to be written by his wife in which she said that she intended to kill herself and stated that he had always been kind to her, so that it would seem by that that the note was prepared in advance and placed in the book and that Hayes was not willing to take the chance that it would be overlooked and took that method of bringing it to the attention of the party who found it, it might have been lost sight of and not discovered, and so a strong basis of his defence might not have been made known. Under that testimony Hayes was convicted and after that the note was taken and submitted to handwriting experts in New York, those handwriting experts said that the note was written by the woman, that it was not manufactured, that there could be no mistake about it, acting on the testimony of those experts, testimony to which I must confess I don't attach much importance, the Governor gave a respite to the man and subsequently pardoned him, but it always appeared to me that even if the handwriting experts had been right, suppose he had compelled her to write that note and place it there where it would be found, that would be a consistent theory, suppose he had taken the gun and forced her to do that, out there in the woods with no one around, that could have been done. That is just an instance that I cite to you in a case of circumstantial evidence. That rule is that circumstances must point to the guilt of the accused, they must be consistent with the guilt of the accused and

inconsistent with any other reasonable hypothesis, any other reasonable theory except his guilt. Take a case in which the circumstances all point to the fact that the defendant did kill the deceased, and they are all consistent with the theory that he did the killing, still if there is some other reasonable theory with which the circumstances are consistent, there you would come in with the reasonable doubt and you would have to reject the proof of his having done the killing and acquit him, because there would be there a reasonable doubt as to whether he did the killing, the circumstances if consistent with some other reasonable theory cannot convict. If they are consistent with the guilt of the accused and inconsistent with any other reasonable theory, then they are sufficient to convict, the evidence is sufficient and you should convict. Any reasonable theory, that don't mean any vague, fanciful theory that may arise in your mind, but you take any reasonable theory that might suggest itself to you, or that might be suggested to you in argument of counsel, you ask yourself, is that a reasonable theory, is that inconsistent with the guilt of the defendant, if it is you ought not to convict on that evidence, if you have circumstantial evidence and nothing else to rely upon.

"Now as to the matter of suicide I explained to you that how in this State a person who forces or persuades another to commit suicide was guilty of murder, as an illustration I stated to you the case in which one prisoner persuaded another to hang himself in jail, and I stated to you that the jury convicted him of murder, in that case the conviction was set aside by the Supreme Court on the ground that in the State of Massachusetts a suicide was not a felony, and that as there was no statute in that State making suicide a felony a conviction would not hold against one who brought it about by participation. In this State it is correct law that the participation in a suicide, persuading a person to commit suicide, and furnishing the means, or putting them

within reach of the person who commits suicide, with the intention of bringing the person to that condition of mind where suicide would be probable, placing the means for committing suicide within easy access of the person, with the deliberate intention that the person should avail himself of such means, in that case it would be murder. That principle was decided in the case of the *State* v. *Lavell,* in the city of Charleston, where a man shot his wife and claimed that he was trying to kill himself, that he put the pistol to his head with the intention of killing himself, and that the ball missed him and killed his wife, he claimed that he could not be held for that on the ground that suicide was not a crime in this State. Our Supreme Court held that suicide was denominated a felony in this State and was so set forth in the form of the coroner's verdict: That the deceased came to his death feloniously, etc. If one kills another in the attempt to commit suicide on himself he is guilty of murder or manslaughter as the facts may be proven. That is the law as I tried to explain it to you on yesterday. So I hope, gentlemen, that now you understand the law pertaining to this case, I could not feel that I was doing my duty to this county if I were to let you off with a mistrial after so short a deliberation. Your comfort has been attended to as far as possible. I realize that a great deal of hardship is incident to this kind of service. I take it that I am talking to you, gentlemen, as men who earnestly desire to reach a verdict in this case. If that be not so, then my words are wasted, but I take it that you are such men. If there is any one of you who is not trying to decide this case from the law and the evidence, but has in view some personal reason, then it is a sad thing and very unfortunate. I tell you, gentlemen, that the jury box is the last place where a man should sit and seek to reward a friend or to punish an enemy. When you get in your jury box you should divest yourself of any personal feeling in the matter and strive earnestly to reach the truth.

" 'To thine own self be true, and it must follow as the
      night the day—
Thou canst not then be false to any man.'

"I hope you, gentlemen, will take this case, the testimony
as you have heard it and the law as I have given it to you,
and try to reach a verdict. Retire to your room."

From sentence on verdict, defendant appeals.

*Messrs. Johnstone & Cromer, James Munro, Townsend
& Townsend, V. E. DePass* and *Stanyarne Wilson,* for
appellant.

*Messrs. Johnstone & Cromer* cite: *Quashing indictment:*
9 Cal., 30, 32; 10 Cal., 334; 1 Mo. App., 3; 36 Tex., 352;
14 Tex. App., 185; 1 Bail., 144; 30 N. J. L., 422. *Election:*
Wig. on Ev., sec. 294; 58 Ia., 298; 14 Rich. L., 169; 15 S.
C., 434; 38 S. C., 353; 137 Ill., 189; 3 Hill (N. Y.), 159.
*Acts of Mrs. Jones excluding conversation incompetent:*
10 Tex. App., 131; 32 N. Y., 141; 33 S. W., 99; 19 S. W.,
931. *Ilustration is charge on facts:* 49 S. C., 488. *Verdict
by jury, one of whom has formed an opinion, before trial,
should be set aside:* 1 Cal., 56; 9 Cal., 208; 84 N. W., 541;
13 S. W., 1010; 20 S. W., 715; 4 Tex., 573; 4 Vt., 363; 24
So., 796; 26 So., 985; 13 So., 733; 64 Pac., 356; 76 Pac.,
159; 2 N. H., 349; 5 Ga., 85; 19 Ohio, 198; 3 Seam, 412;
32 Pac., 166; Fed. Cas., No. 5126; 74 Miss., 675; 1 Bay.,
572; 50 Mo., 309; 64 Mo., 358; 34 Conn., 280; Hard., 167;
4 Bibb., 191; 3 Bibb., 247; 1 B. Mon., 213; 4 Miss., 27; 21
Tex., 526; 31 N. H., 251. *Relevancy of evidence is not for
jury:* 44 Tex., 116; 26 Miss., 362; 43 Tenn., 355. *Words or
acts of others are not binding on defendant:* 142 U. S., 450;
96 Mo., 382; 130 Mass., 39; 132 Mass., 16; 93 N. Y., 470;
5 Gratt., 696; 69 N. C., 486; 94 N. C., 930; 24 S. C., 297;
36 Wis., 429. *Malice:* Wig. on Ev., secs. 395-7. *Instruc-
tion should be limited by the case made:* 5 Tex. App., 163,

492; 18 Tex. App., 15; 7 Tex. App., 623; 43 Tex., 414; 74 Mo., 271; 65 Cal., 501; 56 Tex., 75; 4 Tex. Civ. App., 404; 42 Tex., 451; 37 Neb., 417; 133 Ind., 588; 81 Mo. App., 494; 91 N. W., 585; 11 Okla., 318; 59 S. C., 246. *Instruction not based on evidence improper:* 49 Ala., 20; 111 Ala., 45; 54 Ark., 371; 54 Ark., 336, 489; 36 Ark., 127; 85 Cal., 171; 38 Fla., 169; 18 S. E., 550; 120 Ill., 21; 8 Ill., 368; 18 Ill., 266; 133 N. C., 769; 62 S. C., 1; 58 S. C., 247. *Rule of circumstantial evidence:* 2 Blatch., 207; 1 Tex. App., 368, 652; 32 Ala., 569; 110 N. C., 530; 25 Neb., 185; 9 Cal., 122; 41 Kan., 115; 28 Tex. App., 247; 88 Ala., 193; 87 Ala., 30, 61; 122 Ind., 42; 78 Ia., 486; 51 Mich., 505; 6 Tex. App., 42; 5 Tex. App., 256; 26 Tex. App., 593; 5 Blockf., 579; 10 Tex. App., 131; 32 N. Y., 141; 33 S. W., 99; 19 S. W., 931: *Harmful instruction error:* 8 In., 407; 5 Jones, 115; 18 Ill., 266; 31 Ala., 329; 7 Jones, 206. *Judge indicated opinion of defendant's guilt in charge:* 5 S. C., 65; 19 S. C., 94; 30 S. C., 609; 31 S. C., 238; 15 S. C., 381; 21 S. C., 598; 28 S. C., 4, 572; 21 S. C., 595; 12 Rich. L., 430; 24 S. C., 591; 32 S. C., 45; 33 S. C., 151; 56 S. C., 524.

*Mr. Wilson,* cites: *Second instruction impressed on jury Judge's view of case:* 156 N. Y., 271; 30 S. W., 173; 10 N. W., 44; 14 S. W., 538; 24 S. W., 425; 9 N. E., 500; 34 Pac., 852; 60 Pac., 659; 43 Pac., 256; 17 Kan., 462; 31 S. C., 259; 47 S. C., 523; 51 S. C., 460; 61 S. C., 563; 65 S. C., 331; 71 S. C., 159. *New trial should be granted for hostility of certain jurors:* 74 S. C., 465; 31 S. C., 256; 54 S. C., 146, 150; 55 S. C., 95, 380; 80 S. C., 348.

*Solicitor J. C. Otts, P. H. Nelson, P. D. Barron* and *J. A. Sawyer,* contra.. *The Solicitor* cites: *As to the indictment:* Joyce on Ind., par. 395; 16 R. I., 51; 15 R. I., 527; 115 N. Y., 433; 73 S. C., 330; 38 S. C., 330; 54 S. C., 196; 64 S. C., 350; 54 S. C., 386; 14 S. C., 346. *As to admissi-*

*bility of testimony:* 2 Bay., 126 ; 3 Ency. Ev., 113 ; 150 U. S., 57 ; Green. Ev., secs. 51, 53 ; 47 S. C., 73 ; 64 S. C., 172 ; 123 U. S., 253 ; 130 Mass., 472 ; 115 Mass., 481 ; 136 N. Y., 423 ; 63 N. Y., 590 ; 39 N. Y., 245 ; 150 U. S., 57 ; 136 N. Y., 423. *Malice:* 2 Rich. L., 182. *Inducing party to commit suicide:* 34 S. C., 120 ; 123 Mass., 422 ; 6 Cox. Cr. Cas., 463 ; 13 Mass., 356 ; 12 Law notes, 163, 198. *Disqualified jurors:* 80 S. C., 343.

*Mr. P. H. Nelson,* cites : *Indictment sufficient:* 1 Rich., 184. *Election:* 54 S. C., 158 ; 45 S. C., 483 ; 55 S. C., 354 ; 57 S. C., 284 ; 52 S. C., 470. *Malice:* 31 S. C., 232 ; 32 S. C., 392 ; 33 S. C., 128. *Mistrial:* 79 S. C., 241. *Illustration of circumstantial evidence not on facts:* 47 S. C., 523 ; 58 S. C., 381. *New trial on affidavits as to jurors:* 1 Bay., 377 ; 2 Bay., 150, 267 ; 2 N. & McC., 261 ; 80 S. C., 343.

*Mr. P. D. Barron* cites *: Remedy against hearsay evidence:* 35 S. C., 340 ; 60 S. C., 254 ; 48 S. C., 337 ; 52 S. C., 193 ; 35 S. C., 340 ; 27 S. C., 178 ; 72 S. C., 216 ; 30 S. C., 72. *Other evidence of same kind makes it harmless error:* 78 S. C., 143 ; 76 S. C., 284 ; 70 S. C., 315. *Incompetent evidence not objected to becomes competent:* 35 S. C., 340. *Error cured by instruction:* 50 S. C., 129. *Relevancy of evidence:* 33 S. C., 577 ; 48 S. C., 136 ; 65 S. C., 26 ; 54 S. C., 314 ; 17 S. C., 134 ; 42 S. C., 121 ; 82 S. C., 199 ; 76 S. C., 275 ; 72 S. C., 216. *No objection below, no complaint here:* 73 S. C., 162 ; 75 S. C., 231.

*Mr. J. Ashby Sawyer,* cites *: Malice:* 2 Rich., 182 ; 15 S. C., 413 ; 68 S. C., 312 ; 62 S. C., 270. *Murder by suicide:* 34 S. C., 130 ; 69 S. C., 465 ; 13 Mass., 356. *Charge as to finding verdict:* 79 S. C., 241. *Affidavits as to certain jurors:* 80 S. C., 348.

The opinion herein was filed March 3, but remittitur held up on petition for rehearing until

May 9, 1910. The opinion of the Court was delivered by

JUDGE CHAS. G. DANTZLER, *Acting Associate Justice, in place of Mr. Justice Hydrick, disqualified.*

The defendant, W. T. Jones, upon an indictment, charging him with the murder of Mrs. Marion Jones, his wife, was tried at the spring, 1909, term of the Court of General Sessions for Union county, convicted of murder, with recommendation to the mercy of the Court, and duly sentenced.

The defendant has appealed to this Court upon the following grounds:

(1) "Exceptions in connection with the refusal to quash the indictment, and to compel the State to elect.

"Because his Honor erred in not sustaining the motion to quash the indictment, and because, failing in this, he did not require the State to elect upon which count of the indictment the trial should proceed, upon the grounds stated in the argument of said motion, which were as follows, to wit:

(a) "Because the Court erred in not quashing the indictment upon the grounds submitted on the motion therefor.

(b) "Because the State should have been required to elect upon which count of the indictment it would proceed.

(c) "Because it was error to admit the testimony of B. G. Gregory and Arthur English, relative to Mrs. Jones' acts and conduct towards them as relevant and competent and was entirely illogical if the conversation between them was excluded as irrelevant and incompetent.

(d) "Because the illustration in regard to circumstantial evidence used by the Judge in his second charge to the jury was in reality and substance a charge upon the facts.

(e) "Because the evidence, as a whole, was insufficient to bring about a conviction.

(f) "Because the affidavits submitted in regard to certain of the jurors who had been impanelled should have caused a setting aside of the verdict.

(2) "Exceptions as to the matters of evidence.

(a) "Because his Honor erred in allowing the witness, Ida E. Whitlock, to testify as follows: 'I have seen on her body, the marks of where he struck her;' and, further: 'I saw marks and bruises on her body that Mr. Jones had made;' when it clearly appears that the witness was not speaking from her own knowledge, but from information that she had received.

(b) "Because his Honor erred in failing, when requested so to do, to instruct the witness, Ida E. Whitlock, to refrain from making statements based upon hearsay, this failure taking place especially where the said witness in response to the question: 'Q. Harry was upstairs with them? A. I suppose he was in his own bedroom, his mother told me he was.'

(c) "Because his Honor erred, after holding upon objection made that the testimony of the witness, John Williams, as to whiskey and the taking of supper at the table of Jones was irrelevant and inconsistent, in refusing, upon request therefor, to have the same stricken from the record, and in leaving it to the jury to determine whether or not its relevancy should appear, thus leaving it to the jury to determine a question of law as well as of fact.

(d) "Because his Honor erred, after objection made, in allowing the witness, B. G. Gregory, to answer the question: 'Q. State whether or not before that conversation with Jones you had received a message by a negro boy:' to state that the negro from whom he had received the message was living with Mr. Jones and still living there, and that his name was Mat Gist, thus leaving it to the jury to infer whether the relevancy of the question or answer had been shown or not, it being respectfully contended that unless some connection between Jones and the negro was estab-

lished no action of the negro could bind the defendant or militate against him.

(e) "Because his Honor erred in allowing, over objection, the witness, B. G. Gregory, to testify as to what took place between himself and Mrs. Marion Jones on the night of March 16, 1906, when, as it is respectfully submitted, that each and every portion of it should have been held to be irrelevant and incompetent because there was no proof, certainly no adequate proof, that the defendant, W. T. Jones, was aware of the transaction at the time of its occurrence or had any knowledge connected therewith; and because, as it is respectfully submitted, there is no proof that W. T. Jones was on the premises that night or could in any sense be charged either with knowledge of or responsibility for such occurrences.

(f) "And, further, because his Honor erred in submitting the relevancy of this testimony to the jury for their determination, thus submitting to them the solution of a question both of law and of fact.

(g) "Because his Honor erred in holding that the witness, B. G. Gregory, could state as to whether when he left the house of W. T. Jones, the defendant, on the night of the 16th of March, 1906, Mrs. Jones was crying, holding that the same was an expression of her physical condition, whereas, it is respectfully submitted, that crying is as much an expression as words could be, and in fact is language, and should therefore not have been permitted to be given in evidence unless it had been proved, which it was not, it is respectfully submitted, that Jones, the defendant, was present or had knowledge thereof.

(h) "Because his Honor erred in allowing, over objection, the witness, Arthur English, to testify as to what took place between himself and Mrs. Marion Jones on Sunday morning, July 5, 1908, when, as it is respectfully submitted, that such and every portion of it could have been held to be irrelevant and incompetent because there was no proof, cer-

tainly no adequate proof, that the defendant, W. T. Jones, was aware of the transaction at the time of its occurrence or had any knowledge connected therewith; and because, as it is respectfully submitted, there is no proof, certainly no adequate proof, that W. T. Jones was on the premises that morning in a position to be or could in any sense be charged with knowledge of or responsibility for such occurrences.

(3) "Exception to the first charge of his Honor, the presiding Judge, to the jury.

(a) "Because his Honor erred in charging upon malice in his first charge to the jury as follows: 'Malice means hatred, hostility or ill will, evil intent or disposition, and it may be shown by threats, lying in wait, shooting from ambush, or in some such manner, some express evidence of malice, or it may be implied from brutal conduct on the part of the person committing the crime, such brutality as would show a total disregard of human life, such conduct from which the law implies a malicious heart, a heart totally devoid of social duty, and fatally bent on mischief;' the error being as applied to this case that his Honor charges that from brutal conduct on the part of the person committing the crime of murder, malice could be inferred; whereas, his Honor should have limited it to brutal conduct at the time of the commission of the offense, and not to brutal conduct generally. It should have been restricted to the time of the actual killing, for it is the brutal conduct then, and then only, which warrants a jury in saying whether a killing was done with malice or without malice; whereas, the charge left the jury under the impression that if a person were brutal towards another, or were brutal to another on former occasions, or had been guilty of brutal conduct generally on prior occasions, malice might be inferred to have existed at the time of the killing.

(b) "Because his Honor erred in charging the jury as follows in his first charge to the jury: 'It is charged here in this indictment that this defendant killed the deceased by

administering poison to the deceased. Now, I charge you, gentlemen, that the administering of poison, even though not done by a direct act of the defendant, that is, even though he does not administer it by his own hand to the deceased, yet still if it was administered by putting the deceased in such fear as to persuade and induce her to take the poison, then that would be as much an administering of the poison by the defendant as if he had administered it to her by his own hand, and I charge you that if the deceased came to her death by suicide, by her own hand, that if the State has not satisfied you beyond a reasonable doubt that she did not commit suicide, that the deceased did not come to her death by her own hand, then you cannot convict this defendant under this indictment, with this one limitation: In order for one who incites to suicide to be guilty of murder, a casual connection must exist between the incitement and the suicide, the incitement must be, not necessarily the sole cause, but an inducing cause of the crime. Provided this connection is established, I charge you that it is the law that the inciter is as truly responsible for the act, and therefore as truly a murderer as though he had prevailed upon a third person to commit the homicide. A human being is dead as the consequence of the deliberate act, and it would be a reproach to the law if he could escape punishment by electing to bring about the death by the victim's own hand rather than by the hand of a third party. If he employs a third person, the interposition of the will of the third person will not render him less guilty. Why then should the intervention of the victim's will? I charge you that as the law, that if a man persuades another to commit suicide, and aids, counsels, and abets him in the commission of the act, by furnishing the means, or putting the means within reach, with the intention of bringing about a condition of mind where the person would naturally attempt to commit such act, where the person would seek such means, and place such means in the way, so that the person when

aroused to that state of mind by his deliberate act, would attempt to commit suicide, then that would be for the jury to say whether that was such participation in the suicide. I will give you an illustration: Where there were two men confined in jail, one under sentence of death, to be hanged, the other prisoner persuaded him to commit suicide and so to avoid being hanged, and aided him in preparing the rope with which he hanged himself, aided him, counseled him and furnished him with the means whereby he committed the act, that man was held to be guilty of murder, and that is the law in this State;' the error being at least threefold; first, that there was no allegation in the indictment indicating to the defendant that he was being tried on the charge of his inducing or compelling his wife to commit suicide; second, there was in the evidence submitted nothing going to prove that on the night of her death and immediately preceding her death the defendant had either attempted to persuade or force his wife to commit suicide by poisoning; third, that the language of the Judge left the jury to infer that if any general bad treatment on the part of the defendant during the time of his residence in his new home was calculated to make the deceased so unhappy and so miserable that she would seek to escape from her unhappiness by destroying herself, that the jury would convict the defendant.

(c) "Because his Honor erred when he charged the jury as follows in his first charge to the jury: 'That covers the case, gentlemen. Take the record and find a verdict. When you reach your verdict, and you must arrive at one of them, the foreman will write it on this indictment and sign his name as foreman with the date;' Therein the Judge directed the jury to find one or the other of four verdicts; the first was 'guilty of murder,' the second was 'guilty of murder with recommendation to mercy,' the third was 'guilty of manslaughter,' and the fourth 'not guilty.' He distinctly stated to the jury: 'You must arrive at one of

them.' He kept the jury in the room the whole of one night and the greater part of one day, and when they stated on being called out that they had not reached a verdict and were differing about the facts he charged them again on the law and sent them back, thus indicating that he intended that they must find one of the verdicts which he had stated; the error being that under the law of South Carolina and under the acts of our Legislature the jury has a legal right to make a mistrial.

(4) "Exceptions to second charge of his Honor, the presiding Judge, to the jury.

(a) "Because his Honor erred when informed by the jury that they had failed to agree and that their differences where upon the facts of the case, and not upon the law of the case, in again charging them in regard to the law.

(b) "Because his Honor erred in using the following language in his second charge to the jury: 'I have called you out and had you brought out, Mr. Foreman and gentlemen, to urge upon you the importance of reaching a verdict in the case we are now considering. You have been engaged in the case ever since Wednesday afternoon and have had it under actual consideration, under the charge of the Judge ever since nine o'clock last night, and I want to impress upon you, gentlemen, that you should reach an agreement in the case. The whole testimony is before you, the law of the case has been explained to you and you ought to realize that an immense amount of labor and of talent has been employed in presenting the case to you, and you have it as fairly before you as any jury could have it, and there is no reason why you should not be able to decide it. These mistrials ought not to occur; the county is at great expense in trying the case, and you ought, if possible, reach some conclusion in the matter. Of course, while that is an element you ought not to consider when a human life is at stake, still you ought to try and reach a verdict. Some one has to do it. Some twelve men sitting where you are

have to decide this matter, and you don't want it said that you could not agree, that you were brought here and this trial gone through with, the case presented to you and you could not decide it in some way. You don't want to shift your responsibility upon some one else. Some twelve men have to decide the case, and it is not a fair thing to want to shift the responsibility of deciding the case on some one else by holding out a great length of time and getting the Judge to order a mistrial. I know it is a very hard matter sometimes to decide questions of fact. I know that from my own experience, because I have to decide a great many of them on the equity side of the Court. I know it is hard, and I sympathize with you, gentlemen, but because it is hard is no reason why you should dodge it. I would not want to dodge a case and throw it upon my successor, and I would not want it said that I shirked my responsibility, and I think you gentlemen ought to feel that way about it;' in that the Judge was urging the jury not to exercise their legal right to make a mistrial; and in that the Judge urged the jury not to subject themselves to criticism for failing to reach a verdict; and in that the language of the Judge was calculated to influence the jury to be guided by the judicial anxiety that there should be no mistrial rather than upon their own conception of the difficulties presented by the facts.

(c) "Because his Honor erred in distinctly stating to the jury that he wanted to again charge the jury, and would 'do so at the risk that I might make some little slip stating to you the law of the case;' and, in further stating to the jury: 'I have to be particularly careful in a hotly contested case such as this is not to fall into any apparent error of law;' the error being an indication to the jury, when this language is read in connection with the context, that the Judge personally considered a *slight* error or an error of law that was not too apparent as in itself of but little consequence, and in that it further indicated to the jury the

great necessity for reaching a verdict in this case by disregarding minor things.

(d) "That his Honor erred when in speaking of the Hoyt Hayes case he used the following language in his second charge to the jury: 'Under that testimony Hayes was convicted and after that the notes were taken and submitted to handwriting experts in New York. Those handwriting experts said that the note was written by the woman, that it was not manufactured, that there could be no mistake about it. Acting on the testimony of those experts, testimony to which I must confess I don't attach much importance, the Governor gave a respite to the man and subsequently pardoned him, but it always appeared to me that if the handwriting experts had been right, he had compelled her to write that note and place it there where it would be found. That would be a consistent theory. Suppose he had taken the gun and forced her to do that, out there in the woods with no one around, that *could* have been done. That is just an instance I cite to you in a case of circumstantial evidence:' which language, it is respectfully submitted, was calculated to impress the jury with the idea that in considering circumstantial evidence the jury was at liberty to act upon what they conceived *might* have been the case, upon the idea of what *could* have been the case, what *possibly could* have been done instead of upon the idea of what *actually was done,* or the *proof demonstrated or showed* had been done.

(e) "Because his Honor erred when he charged the jury in his second charge as follows: 'I could not feel that I were doing my duty to this county if I were to let you off with a mistrial after so short a deliberation. Your comfort has been attended to as far as possible. I realize that a great deal of hardship is incident to this kind of service. I take it that I am talking to you, gentlemen, who earnestly desire to reach a verdict in this case; if that be not so, then my words are wasted; but I take it that you are such men.

If there is any one of you who is not trying to decide this case on the law and the evidence, but has in view some personal reasons, then it is a sad thing and very unfortunate. I tell you, gentlemen, that the jury box is the last place where a man should sit and seek to reward a friend or punish an enemy. When you get in your jury box you should divest yourselves of any personal feeling in the matter and strive earnestly to reach the truth.

" 'To thine own self be true, and it must follow as the night
         the day—
Thou canst not then be false to any one.'

" 'I hope you gentlemen will take this case, the testimony as you have heard it, and the law as I have given it to you, and try to reach a verdict. Retire to your room.' It is respectfully submitted that this language was calculated to impress upon the jury the idea that they were there in the charge of the Judge, dependent entirely upon him as to when they could be relieved from further effort in the case, and the thought that there was no escape for them except by rendering some of the four verdicts which the Court had submitted, for their consideration, whereas, it is respectfully submitted, that in this State the jury itself is empowered with the right to put an end to its own deliberations by twice coming into Court and stating their inability to agree. This is a legal right of the jury which, it is submitted, the language of the Court seemed to take away from them.

(f) "Because the second charge of the presiding Judge taken as a whole is a charge upon the facts in that the illustrations selected by him and the applications of the facts covered by those illustrations were so clearly akin, so closely resembled the facts under consideration by the jury in this case that the jury could not but see that there was a discussion being had by the Judge of the facts in this case under the form of an illustration.

(g) "That the charges taken as a whole clearly indicate to the jury his Honor's impression in regard to the facts of the case under consideration.

(h) "That the repeated insistence on the part of the Judge that the jury should find a verdict indicated to the jury that the Judge was satisfied that the facts presented but little difficulty and were legally capable of having a verdict rendered upon them, and his illustrations taken in connection therewith in the second charge clearly indicated to the jury his opinion that they should find against the defendant."

The exceptions embraced in the ground of appeal, denominated "5," involve the same questions as are embraced in the exceptions set forth in the first ("1") ground of appeal.

### OPINION.

The indictment charged the defendant with murder, on two counts. Omitting the formal parts, the first count charged him with "administering and causing to be administered to the said Marion Jones a certain deadly poison commonly called strychnine," on account of which she died; and the second count, with inflicting on and creating in the said Marion Jones "certain mortal injuries and a mortal sickness, a further description whereof is to the jurors aforesaid unknown," from which she died.

On the call of the case for trial, counsel for defendant moved to quash the different counts of the indictment on the ground of indefiniteness; "and, failing in that, to require the State to elect upon which count of the indictment the defendant would be tried, * * *." The refusal of the trial Judge to grant these motions is made the basis of the first exception.

The indictment is sufficiently definite (sec. 56, Crim. Code); and there was no error in refusing to require the State to elect. The rule in this State, as deduced from the cases of the *State* v. *Nelson,* 14 Rich., 169, and *State* v.

*Scott,* 5 S. C., 434, seems to be that, while distinct offenses may be charged in separate counts of the same indictment, the proper practice is, where the several offenses grow out of the same transaction, to instruct the jury to pass upon the several counts separately; but if the several offenses charged do not grow out of the same transaction, then the proper practice is to require the prosecuting officer to elect upon which count he will proceed. *State* v. *Sheppard,* 54 S. C., 181, 32 S. E., 146. In the case at bar the offenses charged grew out of the same transaction; in fact, the same offense was charged in each of the counts of the indictment.

It is alleged that the trial Judge erred in admitting the testimony of B. G. Gregory and Arthur English in relation to the conduct of Mrs. Jones towards them. Before admitting this testimony, it was shown by testimony from which the conclusion could have been reasonably drawn, that the defendant was in the house at the time of the alleged conduct of his wife, and the circumstances clearly indicate that he was there for the purpose of witnessing her conduct.

It is further alleged that the trial Judge erred "in allowing the witness, Ida E. Whitlock," to testify "from information she had received;" and "in failing, when requested so to do," to instruct her to refrain "from making statements based upon hearsay, * * * ." The Judge cautioned this witness in the following language: "Don't state anything that Mrs. Jones told you. You may state what you saw, if anything, but not what was told you." Besides, there was no motion to strike out the testimony complained of. After the above instruction by the Court, the witness, on cross-examination by Mr. Johnstone, in reply to the question, "Harry was upstairs with them?" answered, "I suppose he was in his own bedroom, his mother told me he was." Thereupon, counsel remarked: "We must insist that your Honor instruct this lady about

hearsay matter, * * * ." There was no motion to strike out her answer.

Error is further charged "in refusing, upon request therefor," to have stricken from the record "the testimony of the witness, John Williams, as to whiskey and the taking of supper at the table of Jones, * * * and in leaving it to the jury to determine whether or not its relevancy should appear, thus leaving it to the jury to determine a question of law as well as of fact." Respecting this motion to strike out, the Court said: "Gentlemen, you will see that all this about whiskey and taking dinner at the table is not relevant to this inquiry, and you will not consider it unless its relevancy be shown later." Evidently, the meaning of this instruction to the jury, and so interpreted by them, was that the jury should disregard it unless its relevancy was, thereafter, shown to the *Court* and admitted by the *Court.* This construction of the Judge's language seems to be clear, when it is considered that, when the motion to strike out was first made, he remarked: "If its relevancy is shown later I will let it in, otherwise I will have to strike it out."

Error is further charged "in allowing the witness, B. G. Gregory, to answer the question: 'Q. State whether or not before that conversation with Jones you had received a message by a negro boy:' to state that the negro from whom he had received the message was living with Mr. Jones and still living there, and that his name was Mat Gist, * * *." The witness was asked the question: "Q. State whether or not before that conversation with Jones you had received a message by a negro boy?" Upon objection, the Court held that, "the relevancy will have to be shown." The question was not further pressed.

It is alleged, further, that the trial Judge erred in defining malice, in that, "as applied to this case," his Honor charged "that from brutal conduct on the part of the person com-

mitting the crime of murder, malice could be inferred, whereas, his Honor should have limited it to brutal conduct at the time of the commission of the offense, and not to brutal conduct generally." The testimony tended to show that there were continuous acts of brutality on the part of the defendant against the deceased from January, 1906, up to within a very short time of her death.

In the case of *State* v. *Bodie,* 33 S. C., 129, 11 S. E., 624, in which the defendant, in that case, was charged with murder, the Court observed: "It cannot be doubted, that in a case of this kind it is competent to introduce testimony tending to show the relations previously existing between the parties (*State* v. *Senn,* 32 S. C., 392); * * *."

Error is alleged to have been committed in charging the jury in relation to one who incites another to commit suicide; the alleged error being, "first, that there was no allegation in the indictment indicating to the defendant that he was being tried on the charge of his inducing or compelling his wife to commit suicide; second, there was in the evidence submitted nothing going to prove that on the night of her death and immediately preceding her death the defendant had either attempted to persuade or force his wife to commit suicide by poisoning; third, that the language of the Judge left the jury to infer that if any general bad treatment on the part of the defendant during the time of his residence in his new house was calculated to make the deceased so unhappy and so miserable that she would seek to escape from her unhappiness by destroying herself that the jury could convict the defendant." The charge of his Honor was not irrelevant, correctly stated the law and was not prejudicial to the defendant. We think that the "third" subdivision of the alleged error herein is a misconception of his Honor's charge.

It is further alleged that his Honor erred in charging the jury as follows: "That covers the case, gentlemen. Take

the record and find a verdict. When you reach your verdict, and you must arrive at one of them, the foreman will write it on this indictment and sign his name as foreman, with the date," the complaint being that the Judge stated to the jury that they "must arrive" at one of four verdicts. When the Judge's charges are considered, as a whole (and they should be incorporated in the report of this case), the charge in this particular is not erroneous.

It is further alleged that the Judge erred in repeatedly insisting that the jury should agree upon a verdict, and that his illustrations, "taken in connection therewith," "clearly indicated to the jury his opinion that they should find against the defendant." The Court, in *Nickels* v. *Railway,* 74 S. C., 141, 142, 54 S. E., 255, uses this language: "An examination of this charge will show that there was no request by the jury for its discharge; such being the case the law did not require the Circuit Judge to discharge the jury, especially as he had brought them into Court of his own motion. It is important that the trial of causes should be ended. A Circuit Judge is but discharging his duty to the public, and especially to the litigants, when he urges the jury to reach a verdict, provided nothing like coercion takes place."

In the case at bar, we cannot hold that there was coercion on the part of the trial Judge in an effort to obtain an agreement on the part of the jury; nor do we think that there was an intimation on the part of the Judge that the jury "should find against the defendant."

Error is further alleged in that, his Honor "further indicated to the jury the great necessity for reaching a verdict by disregarding minor things." This criticism seems to be based upon the Judge's statement to the jury that, he wanted to again charge the jury and would "do so at the risk that I might make some little slip in stating to you the law of the case" and on other expressions of similar purport. This statement and these expressions

referred to, had no reference to the jury, and we think could not have influenced the jury, in any way, in their consideration of the case.

It is urged that his Honor further erred in stating to the jury his observations upon the case of the *State* v. *Hoyt Hayes* and his illustration of the rule of circumstantial evidence as deduced therefrom.

Respecting this alleged error, his Honor did not violate the provisions of sec. 26, art. V, of the present Constitution, as construed by this Court in *Norris* v. *Clinkscales,* 47 S. C., 523, 25 S. E., 797, as follows: "We, therefore, conclude and hold that, as it would be impossible to declare the law applicable to a case on trial without connecting the legal principles involved with some state of facts, actual or hypothetical, it was the intention of the framers of the new Constitution, in amending sec. 26, art. IV, that the trial Judge in charging the law of the case should lay before the jury that law as applicable to a supposed state of facts; but that in so doing he should carefully avoid repeating the evidence or the facts at issue, making no statement of the testimony, either in whole or in part. We are clearly of the opinion that under section 26, as it now reads, a Judge may, in declaring the law applicable to the case, base that law upon hypothetical findings of fact by the jury, and instruct the jury that, if they believe so and so from the evidence they have heard, then such and such will be the legal result. In so doing, if he be careful not to repeat any of the testimony, nor to intimate, directly or indirectly, what is in evidence, he will be chargeable neither with stating the testimony nor with charging in respect to matters of fact."

It is alleged, further, that his Honor erred in refusing to set aside the verdict upon affidavits submitted "in regard to certain of the jurors who had been impanelled." After verdict and before sentence was pronounced, a motion for a new trial was made, and, in support of the motion, certain affidavits were offered in relation

4—86

to alleged expressions of certain jurors, made before trial, hostile to the defendant. The affidavits were not served upon the jurors concerned, nor upon counsel for the State.

In the case of the *State* v. *Hardy Harding*, 2 Bay., 267, a motion for a new trial was made on three grounds: "1. Misconduct on the part of the foreman of the jury who tried the cause, in saying before the trial, 'By God, he was one of the jury who was to try the prisoner, and he would hang him at all events.' 2. That he discovered new evidence since the trial, which, if it had been produced, would have evinced the prisoner's innocence. 3. That the evidence offered to the jury was not sufficient to warrant the conviction.

"After hearing the arguments of the counsel on all the different points, the judges were unanimously of the opinion on the first ground, that no affidavit should be received on a motion of this kind, to call in question the integrity of a juryman, or impeach his verdict, unless a copy of it had been served upon him, before the rising of the Court; * * * in order that such juryman might have an opportunity of exculpating himself, or otherwise satisfying the Court that he had not been guilty of any such misconduct as he had been charged with; and this was due, as well to the characters of the jurors of the country, as to the cause of justice itself." The Court refused the motion on second and third grounds, also.

The verdict in the case at bar is not without evidence to support it.

All of the exceptions are overruled.

Wherefore, it is ordered and adjudged that the judgment of the Circuit Court be affirmed.

May 9, 1910. PER CURIAM. After careful consideration of the within petition the Court is unable to discover that any material matter or question has been overlooked or disregarded.

It is, therefore, ordered that the petition be dismissed and that the order heretofore granted, staying remittitur, be revoked.