## ROGERS v. FLORENCE RAILROAD COMPANY.

### WHITTINGTON v. SAME.

1. Under a statute which makes a "railroad corporation responsible in damages to any person or corporation whose buildings or other property may be injured by fire * * originating within the limits of the right of way of said road, in consequence of the act of any of its authorized agents or employees" (*Gen. Stat.*, § 1511), the question of negligence is not involved; but a railroad company is not liable under this statute for damages resulting from a fire within the limits of its right of way, caused by the act of the servants of an independent contractor who was engaged by the company to build the road.

2. A person engaged by a railroad company to grade the road-bed—who was to do the whole work himself, or by servants and agents employed by himself, at a stipulated compensation—is an independent contractor, and not an employee of the company, notwithstanding certain agreed conditions under which the work was to be done, and which were intended to guaranty the faithful execution of the work, but which did not apply to the mode and manner of having it done—such as the approval of the work by the chief engineer, and the employment of an assistant engineer, the increase of the working force and the discharge of improper hands when required by the company, the liability of the contractor for damages as between himself and the company, and the removal or burning of trees, bushes, &c.

3. Where a contract is in writing, it is within the power and duty of the judge to construe and declare its terms.
4. The privileges and franchises granted to a railroad corporation do not prevent it from letting out the construction of its road-bed to an independent contractor.
5. Where plaintiffs are entitled to recover because of negligence on the defendant's part, the question of negligence should be determined by the jury.
6. Declarations of third parties to a witness are inadmissible because hearsay.

Before ALDRICH, J., Marion, October, 1888.

These were actions by Lot B. Rogers and C. C. Whittington against the Florence Railroad Company. The contract between the defendant and J. D. Hardin, so far as it has any bearing upon this case, was as follows:

Articles of agreement made and concluded upon this 15th day of February, in the year of our Lord one thousand eight hundred and eighty-          , between James D. Hardin, of the part first, and Florence Railroad Company, of the other part, as follows:

Witnesseth, that for and in consideration of the payments and covenants hereinafter mentioned to be made and performed by the said railroad company,

The said party of the first part doth hereby covenant and agree to and with the said railroad company to construct and finish in a substantial and workmanlike manner, and to the approval and acceptance of the chief engineer of the company, all the excavation, embankment, and other work essential and incidental to the complete graduation of all of that part of the said railroad, known upon the maps and profile as section Nos. one, two, three, and four, to be built continuously, beginning with sec. 1, and to do and perform all other matters and things as set forth and required in the specifications hereto annexed, and agree to be held and taken as a part of this agreement.

And the said party of the first part doth further covenant and agree that the work embraced in this contract shall be commenced on or before the 1st day of March, 1887, and be continuously prosecuted with such force as will ensure its completion on or before the 1st day of September, 1887, and it is distinctly understood that the completion of the work by or before the said time is a binding and essential portion of this agreement.

And it is further agreed that in the event that the said work shall not be commenced or prosecuted as aforesaid, or if the party

of the first part, on being thereto required by the chief engineer, shall fail or refuse to increase the force engaged upon the work for ten days from the date of such requirement by the said engineer, or shall fail to comply with any of the written orders or directions of the chief engineer; or shall violate any of the essential terms of this agreement; then, upon the fact being made known to him, the president of the said railroad company may declare this contract forfeited and abandoned, and the said railroad company exonerated from all and every obligation existing or ensuing under it, and the said party of the first part shall forfeit to the said railroad company as well the reserved percentage as also all other dues to the said party of the first part owing, and all material furnished and work done for which no estimate may have been made and returned to the secretary of the said company, in satisfaction of the damage incurred by said company through the delinquency of the said party of the first part; and said railroad company may agree with any other party for the completion of the work, as if this agreement had never been entered into. And it is further agreed that if the party of the first part shall fail to comply with the requisition of the chief engineer to place additional force upon the work, it shall be competent for the president of said railroad company, instead of declaring the contract forfeited and abandoned as aforesaid, to procure and place upon the work such a force of hands and managers as will secure its completion by the time stipulated, and charge over the amounts paid out for the work done as cash payments to the party of the first part.

And it is further agreed that the president of the said railroad company, for any of the causes above mentioned, may declare any portion of the work abandoned and forfeited herein contracted for. such portion to subject to the same forfeiture and control as if the whole were abandoned.

And it is further expressly agreed that in the event the work is not completed at the time stipulated, the party of the first part shall not be privileged to abandon the work merely forfeiting the reserved percentage, but the president of the said railroad company shall have the right to employ such a force of hands and managers and necessary implements, mules, carts, &c., as may be adequate to complete the work in the shortest time, and charge over the amount paid out for such labor as cash paid to the said party of the first part.

The said party of the first part shall not assign or sublet the whole or any part of this contract without the consent of the president of the said railroad company. The said party of the first part shall discharge any foreman or other employee who shall, in

the judgment of the engineer in chief, or the assistant in charge of the work, be unfaithful, unskilful, or remiss in the performance of his work, or guilty of riotous, disrespectful, or otherwise improper conduct, and no person discharged from this work, or other work done for the said railroad company, shall be employed again by the party of the first part upon his work without the written consent of the chief engineer.

The use or sale of ardent spirits or other intoxicating beverages upon the work, or in any of the buildings, boarding houses, or other tenements, owned or occupied by the said party of the first part or his employees, is strictly forbidden.

Where the line of railroad passes through farms, the said party of the first part shall keep up such temporary fences as may be necessary for the protection of the crops, and shall be responsible for any damage that may be done by him or his employees or hands, during the progress of the work, to property adjacent to the line, in consequence of their unskilfulness or negligence; and if any such damage shall be done, the president of the said railroad company shall have the right to settle and pay therefor and deduct the amount from the next estimate made him.

Whenever any work herein embraced shall in any manner interfere with a public or private road, the party of the first part shall keep a temporary roadway during such interference at all times unobstructed and safe for travel, and any damage from failure to do so may be settled and paid for and withheld, as above stated, unless settled by the party of the first part.

No claim for extra work will be allowed or considered unless the same shall have been done by written order of the chief engineer or the assistant in charge of the work.

No extra compensation shall be made to the party of the first part for hindrances or delays from any cause in the progress of any work. if such hindrance or delays arise from any cause other than the fault of the party of the first part; in that case he shall be entitled to such an extension of time. for the completion of his work as may compensate him for the detention.

And the said railroad company doth covenant, grant, and agree to and with the said party of the first part, that an assistant engineer shall be regularly retained in its service, to direct in the execution of the work, and to make out monthly estimates of the quantity and relative value of each species of work done pursuant to this contract, and also of the relative value of all suitable material which may have been delivered upon the site of the work, or at other convenient points, if properly secured to the said company.

He shall also include the value of any extra work done or ma-

terials furnished in consequence of any change or alterations in the plans of the work, when such change shall have caused an increased expense to the party of the first part; where such change has diminished the work and expense, a proper deduction shall be made in his said estimate; and it is agreed that the estimates made monthly as aforesaid, during the progress of the work, shall be considered only as approximate, nor shall such estimates be considered as an approval and acceptance of the work done. Said estimate shall be approved by the chief engineer and forwarded by him to the secretary and treasurer of the company. Upon the completion of the work and its approval and acceptance of the chief engineer, a full and exact estimate of the whole work done shall be made and certified by the chief engineer to the secretary of the railroad company, according to the following prices : * * *

The witness, Page, was permitted to testify to a conversation between himself and two unknown railroad hands, at the fire on Sunday, as to the origin of the fire; and Bethea testified that one Wingate, and another person unknown, told witness that if he would help put out the fire, they would pay him—they afterwards told the foreman of the work that witness had helped, and he was paid by such foreman.

*Messrs. J. T. Barron* and *Johnson & Johnson,* for appellant, upon the points decided by this court, *cited* 1 *Redf. Rail.,* 503; 2 *Rorer Rail.,* 840, § 4; *Addison Torts,* §§ 580–1; 2 *Wood Rail. L.,* 1008, *et seq.;* 15 *Am. & Eng. R. R. Cas.,* 110: 23 *Id.,* 423; 35 *N. J.,* 17; 38 *Barb.,* 653; 5 *N. Y.,* 48; 8 *Id.,* 222; 62 *Me.,* 437; 23 *Iowa,* 562; 81 *Eng. C. L. Rep.,* 550; 22 *Eng. L. & Eq.,* 366; 30 *Barb.,* 229; 55 *Am. Dec.,* 322; 51 *Id ,* 200; 56 *Me.,* 520; 4 *Exch.,* 244.

*Messrs. C. A. Woods* and *W. J. Montgomery,* contra, *cited* 19 *N. H.,* 427; 51 *Am. Dec.,* 193; 6 *H. & N.,* 81; 14 *Ill.,* 85; 56 *Am. Dec.,* 495; 23 *Pick.,* 24; 38 *Am. Dec.,* 669; 63 *Id.,* 743; 3 *Gray,* 349; 20 *Ill.,* 385; 71 *Am. Dec.,* 286; 22 *Ill ,* 109; 7 *Mich.,* 421; 25 *Kans.,* 745; 71 *Am. Dec.,* 295; 5 *Wall.,* 90; 17 *Id.,* 445; 28 *S. C.,* 404; 17 *N. Y.,* 104; 86 *Ill.,* 110; 5 *Ohio,* 38; 15 *Wall.,* 649; *Deer. Negl.,* 220; 15 *Fed. Rep.,* 875; 45 *Ill.,* 455; 1 *Rob.,* 432; 11 *N. Y.,* 432;

16 *Wall.*, 566; 2 *Black*, 418; 28 *S. C.*, 404; 56 *Am. Dec.*, 494; 18 *S. C.*, 262; 23 *Id.*, 528.

July 22, 1889.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   These two cases were heard together below, and they were also heard together on appeal here. The defendant is a railroad corporation, having obtained a charter to construct a railroad through Marion County.   The gradation of the road, or a portion of it, was let out under contract to Mr. James D. Hardin.   This contract will be found in the "Case." In the progress of the work, a fire, which had been kindled within the right of way of the defendant, escaped from said right of way and ran over certain adjoining lands of the plaintiffs, doing considerable damage thereto and to timber thereon, as alleged, and these actions were brought to recover the damages sustained. The jury rendered a verdict for the plaintiff in each case, to wit, in the first case for $900, and in the second for $600.   The defendant has appealed in each case.

We suppose that these actions were instituted under section 1511 of the General Statutes, which provides that "Every railroad corporation shall be responsible in damages to any person or corporation whose buildings or other property may be injured by fire communicated by its locomotive engines, or originating within the limits of the right of way of said road, in consequence of the act of any of its authorized agents or employees, except, &c., &c."   It will be observed that the question of negligence cannot arise under this act, because the company is to be held liable, where the fire originates within its right of way, in consequence of the act of any of its authorized agents or employees, without regard to the fact of negligence one way or the other. Now, it is conceded that the fire here did originate within the right of way of the defendant; was this, however, in consequence of an act of any of its authorized agents or employees, was the main question in the case.   His honor held that Mr. Hardin, though a contractor, was an employee of the company, and he ruled and so charged the jury in terms as matter of law, that the defendant was liable.   There are several exceptions in the case,

but the vital one, and the one upon which the appeal mainly turns, is whether his honor erred in charging as above.

It is conceded upon both sides, that, as a general rule, where a contractor is an independent contractor, as to any work, that the employer is not responsible for injuries occasioned by his negligence, or that of his servants or employees. Or, to use the language of one of the counsel of the respondents, the general rule is, "that when a person lets work to be done by another independent of any control of the employer, furnishing his own material and labor, the relation of master and servant is not created, and the employer is not liable for the negligence or improper execution of the work, nor responsible for the negligence or carelessness of the contractor in its performance. In short, employers are not generally liable for the acts of contractors." The correctness of this principle was not contested below by the counsel on either side, nor by his honor, the Circuit Judge. On the contrary, his honor held that Hardin was not an independent contractor, but was an employee of the company ; and it being conceded that the fire in question originated within the right of way of the company while Hardin's work was in progress, in consequence of an act of his employees, the company was responsible, under the express terms of the act *supra.*

Ordinarily, or at least under some circumstances, the question, whether one is the employee or agent of another, or an independent contractor, might be a question of fact, and in such case it would be error for the trial judge to undertake to determine it. It should be left to the jury. In the case before us, however, the relation in which Mr. Hardin stood to the defendant depended upon the contract under which Mr. Hardin was building and constructing defendant's road ; and that contract being in writing. it was, doubtless, within the province of his honor to consider this question as embraced in his power and duty to construe said written contract. So that the last point is, did he construe it correctly? Is it a fair and legitimate deduction, from the terms and provisions of that instrument, that Mr. Hardin was an authorized agent or employee of the defendant, in the sense of the act, instead of being an independent contractor? And that his agency or employment brought his servants and employees, from whose

act the fire originated, into the same relation as that of himself to the defendant?

Before this instrument could thus be construed, it should appear, from its terms, either express or implied, that the defendant itself was executing the work through Hardin and other servants and laborers, all in its employment, under its control, and subject to its power and management. Here, the contract was between Mr. Hardin of the first part and the defendant of the second—no other parties. There were various stipulations and specifications as to the character of the work to be done. It was, no doubt, well known and understood, that Mr. Hardin could not, and was not to, do the work, or any portion of it, personally and individually. On the contrary, he was a contractor for the whole work, to be done by servants and laborers employed by himself. The corporation had the right, no doubt, to undertake this work itself, hiring its own servants and laborers, but it certainly did not do so. It let the whole contract out to Mr. Hardin, and it looked to him for its completion. Thus far it would seem, if there could be an independent contractor, it was here.

It is urged, however, that there were terms in the instrument which reserved control to the defendant, so far as to make Hardin a mere employee and also his laborers; and instead of the work being done by Hardin, through his employees, it was actually done by the defendant, through its employees, including Hardin, who employed the laborers for the company and not for himself. The terms relied on for this view may be grouped together as follows: "The work was to be done subject to the approval of the chief engineer. The company shall retain regularly in its service an assistant engineer, to direct the execution of the work. Hardin shall increase the force whenever required by the chief engineer. That if he fails to complete the work within the time stipulated, the company may hire hands to complete it at his expense. That he shall discharge any employee who shall, in the judgment of the chief engineer, or assistant in charge of the work, be unfaithful, unskilful, or remiss in the performance of the work, or guilty of riotous, disrespectful, or other improper conduct. That Hardin was to be responsible for damages as between himself and the company. * * * All trees, logs, bushes, and other perish-

26—31

.able material will be removed to the outer limits of the clearing or burned up." These were the prominent conditions and limi-tations under which Hardin was to have the work done. The work itself was a different thing; this was described in other ·specifications contained in the contract, prescribing not what the ·company was to have done, but what Mr. Hardin was to have ·done.

· Now, we suppose, if the contract had not contained the condi-tions and limitations above, that it could hardly be contended that Hardin was not an independent contractor. Do these con-ditions destroy and negative that feature? We think not, for the reason that they do not apply to the mode and manner of ·having the work done, nor do they in any way take said work ·out of the hands of Hardin. They are nothing more than certain rules under which the work was to be done by Hardin, and in-tended to guaranty the faithful execution of the specified work. We do not see why one working under specified rules may not be an independent contractor, as without such rules. One contract-ing to build a house, according to specifications and plans drawn ·by an architect, and under the inspection of the architect, which is usually the case, would, none the less, be an independent con-tractor, because of the presence and inspection of the architect. The point is, who is doing the work? Is the company doing it by its employees, or is the contractor by his? The company cer-tainly had the right to see that the contractor was doing the work according to the contract, and that he employed skilful and pro-per laborers, and the regulations above were, as it appears to us, intended to accomplish this end—nothing more. We have ex-amined the numerous cases referred to by the counsel, and while there are expressions in many of them and decisions which seem to ,sustain respondents' view of this contract, yet we think, at last, each case must rest on its own facts, with the conceded doc-trine overhanging all the cases, that the question of ˙liability depends on the fact, whether the company is doing the work, or whether it is being done by an independent contractor. Here, we think in this case, that Mr. Hardin was an independent con-tractor.

It is said,. however, that there are certain exceptions to the

rule above, under one of which the case may be brought.    The first exception to the rule claimed in the argument, is expressed therein as follows, to wit: "When the employer as a corporation is charged with certain obligations, reciprocal to the privileges and franchise granted, it cannot shift the responsibility from itself by employing a contractor to do the work for it."    This is very general, and we do not know that we fully comprehend it. If it means that a railroad corporation on account of the large powers generally granted to them, eminent domain, &c., cannot be allowed to construct their track, &c., through an independent contractor, but must do such work through their own servants and employees, we have only to say that we have found no authority for such a position.    On the contrary, numerous cases from different States, many of them cited in the argument here, have reached the courts, where the right to have such work done by independent contractors was distinctly recognized; said cases turning upon the question, whether in fact the relation of independent contractor existed.    If it means that where certain obligations exist, growing out of the privileges and franchises granted to the corporation, which would be inconsistent with the right of the company to employ an independent contractor to meet said obligations, from public policy or otherwise, then the principle may be conceded; but the propriety of its application must be shown.    No obligation of the defendant has been pointed out here inconsistent with having its road graded by an independent contractor.

The 2nd exception claimed to the general rule above is, "That the employer is liable where he does not release the entire charge of the work to the contractor, but retains supervision of its construction."    This is nothing more than saying that where the contractor is not an independent contractor, but is under the control of his employer, the employer is liable.    In other words, instead of its being an exception to the admitted doctrine above, it seems to be nothing more than stating it in different phraseology.    Or rather, while recognizing the doctrine, it states a certain condition where the employee would not be an independent contractor, to wit, where the employer had not released the entire charge of the work to him, &c.

In *Railroad Compary* v. *Hanning* (15 Wall., 649), this matter is fully discussed, both in the opinion of Mr. Justice Hunt and in a note attached; and without encumbering this opinion with a discussion of the character of the control reserved, which will hold the employer responsible, we may say that no such control was reserved here. See the case of *Railroad Company* v. *Hanning, supra,* and the numerous cases there cited in the opinion and the notes. The reserved control, to have that effect, must be both general and special, and not only as to what work shall be done, but also how it shall be done. See *Hughes* v. *Cincinnati & Springfield Railway Co.,* 15 Am. & Eng. R. R. Cas., 101, and notes attached. See also *Lesher* v. *Wabash Navigation Company,* 56 Am. Dec., 495 ; *Bailey* v. *Mayor of N. Y.,* 38 *Id.,* 669 ; *Hilliard* v. *Richardson,* 63 *Id.,* 743, and the notes. Nice shades exist, and many of the cases are hard to reconcile ; but all seem to recognize the common rule, that liability is to be determined upon the fact whether the party doing the work is an independent contractor or an agent and servant of the company, which must be ascertained from the facts of each case.

Thus far the case has been discussed under the supposition that the action below was brought under section 1511 of the General Statutes, which, as we have held, would make the corporation liable, under the facts therein specified, without regard to the fact of negligence. The complaints, however, allege negligence on the part of the defendant, and if that is relied on, as the gist of the action, then we think his honor was in error in taking the cases from the jury, and in holding that the company was liable in both of them. The existence of negligence is a question of fact, and is for the jury.

We think the objections made to the testimony of Page and Bethea should have been sustained on the ground of hearsay. The other exceptions seem to be immaterial, and need not be considered.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the case be remanded.