10563

HARPER v. ABERCROMBIE.

(105 S. E. 749.)

1. PRINCIPAL AND AGENT—MORTGAGOR'S AGENCY TO TRADE MORTGAGED PROPERTY AS MORTGAGEES' AGENT HELD FOR JURY.—In mortgagees action against mortgagor's purchaser for possession of mortgaged automobile following mortgagor's default, in which purchaser claimed that mortgagees were estopped from claiming ownership on the ground that they had held mortgagor out as their agent to trade the automobile to him, evidence *held* sufficient for submission of such issue to the jury.

2. CHATTEL MORTGAGE — MORTGAGEES SUING FOR POSSESSION AGAINST MORTGAGOR'S PURCHASER REQUIRED TO PROVE THAT MORTGAGE WAS GENUINE.—In mortgagees' action against mortgagor's purchaser to recover mortgaged automobile following default in purchase money mortgage, where purchaser claimed that title had remained in mortgagees, and that mortgagor had sold automobile as mortgagees' agent, mortgagees had the burden of proving the mortgage under which they claimed title was a genuine mortgage to secure an outright sale of the automobile to mortgagor.

3. PRINCIPAL AND AGENT—RECORD OF CHATTEL MORTGAGE DID NOT PRECLUDE MORTGAGOR'S PURCHASER FROM ASSERTING MORTGAGOR'S AGENCY TO TRADE.—That chattel mortgage was on record did not preclude mortgagor's purchaser, who claimed to have purchased the mortgaged automobile in the belief that mortgagor was mortgagees' agent, from interposing, in mortgagees' action for possession of automobile, the defense that mortgagees were estopped from claiming ownership by having held mortgagor out as their agent to trade automobile to purchaser.

4. TRIAL—THE COURT SHOULD ADMONISH JURIES AS TO THEIR DUTY TO DECIDE CASE, AND, IF POSSIBLE, AGREE ON VERDICT.—The Court ought

to admonish juries of their duty to decide the case in hand, and advise jurors to reconcile their differences and agree on a verdict, if it can be done upon any reasonable view on consideration of the evidence, and should keep the jury together as long as there is a reasonable probability of their being able to agree.

5. APPEAL AND ERROR—ERROR IN CHARGING JURY AS TO ITS DUTY TO AGREE HELD HARMLESS IN VIEW OF EVIDENCE.—Error of Court, if any, in impliedly threatening to keep jury together all night and perhaps longer on their inability to agree on a verdict, will not be permitted to disturb verdict, where, upon consideration of the evidence, the Supreme Court is satisfied that any fair jury would have found the same verdict, if there had been no error.

Before MEMMINGER, J., Laurens, Spring term, 1920. Affirmed.

Action by J. C. Harper and R. G. Harper, partners as Overland-Harper Co., against John Abercrombie. From judgment for defendant, the plaintiff appeals.

*Messrs. F. P. McGowan* and *Dial & Todd,* for appellant, cite: *Testimony contradicting the face of the mortgage was incompetent:* 97 S. C. 136. *Deed absolute cannot be shown by parol to be upon a condition:* 58 S. C. 125; 27 S. C. 348. *Registration of mortgage as notice:* 1 Civ. Code 1912, sec. 3542; 20 R. C. L. 320; 104 S. C. 164; 27 Cyc. 1199; 16 Cyc. 730; 77 S. C. 425. *Verdict should have been directed:* 104 S. C. 16; 109 U. S. 478. *Charge on facts:* 68 S. C. 153; 79 S. C. 120. *Court tried to coerce jury:* 38 Cyc. 1855-56.

*Messrs. Simpson, Cooper & Babb,* for respondent, cite: *Garrett was agent of plaintiff:* 15 S. C. 88; 111 S. C. 507. *No charge on facts:* 58 S. C. 381; 80 S. C. 531; 88 S. C. 520; 109 S. C. 295.

January 31, 1921.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiffs sued defendant for possession of an automobile, claiming title under a past-due chattel mortgage given them by R. E. Garrett for the purchase price thereof. The mortgage was dated and recorded April 4, 1919. Defendant denied the allegations of the complaint and set up the defense of estoppel, on the ground that plaintiffs had held Garrett out as their agent to trade the car to him, and that he had traded for it in that belief.

One of the plaintiffs testified that he sold the car to Garrett and took his note due at one day secured by the mortgage for the full amount of the purchase price, $1,095; that as soon as he learned (on April 9th) that Garrett had traded the car to defendant, and had not paid the note and mortgage, he took steps to get possession of it under the mortgage; that Garrett had sold and traded cars for plaintiffs as their agent for about two years prior to December 31, 1918, on which day his contract of agency expired; that while he was their agent he sold and traded a large number of cars for them in the territory assigned to him, and no notice was given the public that his agency had expired; that he owed them about $5,000, growing out of his dealings with them, for which they had been endeavoring to get a settlement on the day they sold the car in question: that in November, 1918, they put three cars into his hands for sale, and took chattel mortgages on them; that he sold them and failed to pay the mortgages, but they never attempted to take the cars from the purchasers under the mortgages; that that was not a straight sale, but the one on April 4th was, but, of course, if Garrett had paid for the car, no attempt would have been made to take it from defendant; that about March 1, 1919, he loaned Garrett a car which he traded to Hill, and turned over Hill's check and car taken in exchange; that he was dissatisfied with the price allowed for Hill's car, and paid

Hill $50 to rescind the trade. There was also undisputed evidence that Garrett had assisted in the sale of other cars for plaintiffs in the spring of 1919, before the trade with defendant.

Garrett testified that he had sold and traded cars for plaintiffs, as their agent, for about two years, and was their agent to trade the car in question to defendant, and so told defendant; that he had frequently given plaintiffs his note and mortgage for cars which they put into his hands to trade or sell to enable them to use the same as collateral to raise money to pay for the cars, which were shipped to plaintiffs with draft attached to the bills of lading for the purchase price, and he supposed that was their reason for taking the note and mortgage in question; that the car was turned over to him with the understanding that he was to sell or trade it, and one of the plaintiffs told him to do so; that one of the plaintiffs told him that he had tried to trade another car to defendant a short time before, and told him to trade this one to him.

Defendant and his son testified that one of the plaintiffs tried to trade defendant a secondhand Overland for his Maxwell a week or two before he traded with Garrett, but he told plaintiff that he would not trade for a secondhand car, but might trade for a new Overland 90 (the type of car in question), and plaintiff told him he would send one out by Garrett or Irwin (another salesman) as soon as he got some in; that a week or two later Garrett came with the car in question, and he traded for it, in the belief that he was trading with him as the agent of plaintiffs.

From judgment on a verdict for defendant, plaintiffs appealed.

The first point urged by appellants is that the Court erred in refusing their motion to direct a verdict in their favor. The foregoing statement of the evidence shows that this ground is untenable.

The next point is that the Court charged on the facts. A careful consideration of the charge shows that the Judge did not express or intimate his opinion upon any issue of fact.

The next ground is that the Court erred in putting upon plaintiffs the burden of proving that the mortgage under which they claimed title to the car was a genuine mortgage to secure an outright sale of the car to Garrett. That was clearly right. The burden was upon plaintiffs to prove every fact in issue which was necessary to establish their title and right to possession of the car.

The next ground is that the Court erred in charging the jury as to the comparative negligence of plaintiffs and defendant with respect to the agency of Garrett and notice or knowledge thereof by defendant and the defense of estoppel. Appellants err in supposing that those issues could not have arisen, because their mortgage was on record. *Cudd v. Rogers,* 111 S. C. 507, 98 S. E. 796.

The last ground is that the Court coerced the verdict by threatening to keep the jury together for an unreasonable length of time, unless they should agree on a verdict.

After the jury had been out some time (the record fails to disclose how long) the Court had them brought in and asked if they desired any further instructions. The foreman replied that the trouble was that "everybody seems to have made up their mind." The Court then asked if there was any probability of their agreeing. The foreman replied: "None at all, sir." Thereupon the Court admon-

ished the jury as to their duty to reach a verdict, and, in the course of his remarks, said:

"Anything the Court can give information about it can do so now, and save you all this inconvenience and hardship of having to remain all night and perhaps longer in the jury room. It is a matter in the discretion of the Judge to see that justice is done, and that every reasonable effort is made, without any compulsion, to get a decision of a case. Of course, if the jury have just made up their minds that they will not decide one way or the other, regardless of what the law and facts are, it is almost hopeless, but I have seen juries that thought that way; nevertheless they have reached verdicts which were satisfactory to all parties."

The Court then restated the salient principles of law applicable to the case clearly and correctly, and concluded thus:

"So I have asked you gentlemen to retire and to go on with further consideration of the case, As I say, we don't wish to impose any hardships on any jury. The provisions made for the comfort of juries in most of our courthouses are inadequate, and involve a great hardship. There is no doubt about that. To sit around one of these jury rooms all night and perhaps a much longer time than that is a hardship, but it is necessary in the administration of justice that we be subjected to those kinds of hardship rather than have a mistrial. Just retire to the room, gentlemen, and try to decide the case."

The language above quoted, which is objected to as having had a tendency to coerce the verdict, is not so strong as that which was held to be sufficient to call for reversal in *State v. Shuman,* 106 S. C. 150, 90 S. E. 596, and *Fairey v. Haynes,* 107 S. C. 115, 91 S. E. 976. The Court ought to admonish juries of their duty to

decide the case in hand and advise them to reconcile their
differences and agree on a verdict, if it can be done upon any
reasonable view on consideration of the evidence; and the
Court ought to keep the jury together as long as there is a
reasonable probability of their being able to agree. The
length of that time will, of course, depend upon the circum-
stances of the case, the kind and amount of evidence to be
considered, and other circumstances which readily suggest
themselves; hence it must be left to the discretion of the
Court. *Dover v. Lockhart Mills,* 86 S. C. 229, 68 S. E.
525; *State v. Jones,* 86 S. C. 17, 67 S. E. 160. There are
numerous cases in our reports where juries have been kept
together all night and longer, and have been brought in and
admonished of the importance of reconciling their differences
in a proper way, and such verdicts have been sustained.
*State v. Jones, supra; Caldwell v. Duncan,* 87 S. C. 331, 69
S. E. 660; *Nickles v. Railway,* 74 S. C. 102, 54 S. E. 255.
It follows that, if the Court had said nothing in advance
about how long he intended to keep the jury together, and
had kept them together all night or longer, under proper
conditions for their comfort, in the absence of any objection
or complaint on the part of the jury (as in *State v. Kelley,*
45 S. C. 659, 24 S. E. 45), there would have been no ground
to complain of the Court's action. The objectionable fea-
ture of the Court's remarks to the jury lies in the implied
threat to keep them together all night and perhaps longer,
under circumstances of hardship which were impressed upon
the jury.

The Court should have at least assured the jury that
such provisions would be made for their comfort as the cir-
cumstances would permit. We would have been better sat-
isfied to affirm the Court's action, if this had been done, and
if the threat implied in the Court's remarks had been omit-
ted. But, for the reason hereinafter stated, we deem it

unnecessary to decide whether the error assigned would have called for reversal under other circumstances.

But the verdict is so manifestly just and right that it must be affirmed on the principle announced in *Dennis v. Railway*, 93 S. C. 295, 76 S. E. 711, that this Court will not disturb the verdict where, upon consideration of the evidence, it is satisfied that any fair jury would have found the same verdict, if there had been no error. *Lowe v. Ottary Mills*, 93 S. C. 420, 77 S. E. 135.

Judgment affirmed.

The CHIEF JUSTICE and MR. JUSTICE GAGE were absent on account of sickness and took no part in this decision.