## 11174

### COLEMAN v. STEVENS *ET AL.*

#### (117 S. E., 305)

1. APPEAL AND ERROR—IN ACTION FOR CONSPIRACY TO CURTAIL OUTPUT, ADMISSION OF EVIDENCE OF BELIEF AMONG STRIKING EMPLOYEES AS TO CAUSE OF STRIKE HELD NOT PREJUDICIAL ERROR.—In an action alleging a conspiracy to operate a mill, of which plaintiff was formerly president, so as to curtail production and thus prevent plaintiff from exercising an option to repurchase stock in this mill within six months of his transfer of the stock to defendant, the admission of evidence that the current belief among employees was that the man who held the position of master mechanic under plaintiff's administration and at the time of the strike did not get along with the president, and hence he was instrumental in causing the strike *held* not shown to be prejudicial error.

2. EVIDENCE—MASTER MECHANIC'S RESPONSIBILITY FOR STRIKE CANNOT BE ESTABLISHED BY REPUTATION.—The responsibility of master mechanic for, or his connection with, a strike cannot be established by reputation or public opinion among striking employees, and the fact that the master mechanic was not one of the strikers did not render evidence of his responsibility for the strike less competent.

3. TRIAL—INSTRUCTION AS TO EVIDENCE OF FRAUD HELD NOT ERROR AS BEING CHARGE ON FACTS.—An instruction that deceit or fraudulent representations to be actionable must relate to existing or past facts, and the failure to perform a promise does not in and of itself constitute fraud, or evidence of fraud, *held* not error as being a charge on the facts, in view of the other instructions.

4. FRAUD—VIOLATION OF CONTRACT NOT ACTIONABLE.—A mere violation of a contract will not support an allegation of fraud.

5. TRIAL—APPEAL TO JURY TO PERFORM THEIR DUTY AFTER JURY HAD REPORTED ITS INABILITY TO AGREE HELD NOT ERROR.—Where the trial of a case had consumed about a week, and the jury, after being out all night, had reported its inability to agree on a verdict, the trial Judge, comparing the jury's failure to agree to a regiment failing to perform services which it was ordered to do in time of war, *held*, in view of the whole appeal to the jury to make every reasonable effort to perform their duty, not such abuse of trial Judge's discretion as will constitute reversible error.

Before McIVER J., Newberry, 1922. Affirmed.

Action by William Coleman against John P. Stevens, *et al.* Judgment for defendants and plaintiff appeals.

*Messrs. R. B. Herbert, H. N. Edmunds, Hunt, Hunt & Hunter,* and *George B. Cromer,* for appellant, cite: *State-ment of opinion of employees, based on what witness heard, as to cause of strike, hearsay and inadmissible:* 41 S. C., 122; 40 S. C., 328; 35 S. C., 360; 31 S. C., 388. *Charge on facts:* 90 S. C., 414; Benj. Sales (7th Ed.), 470; 82 S. E., 124; 38 S. C., 272; 36 S. C., 524. *Coercion of jury:* 90 S. E., 567; 91 S. E., 976; 10 L. R. A., 88.

*Messrs. McDonald & McDonald, Grier & Park,* and *Eugene S. Blease,* for respondents, cite: *Wide latitude allowed in case charging fraud and deceit:* 2 C. J., 227; 113 S. C., 317; 103 S. C., 291. *On appeal Court is limited to a consideration of grounds of exception to testimony stated at trial:* 113 S. E., 377; 113 S. E., 369; 115 S. C., 366; 94 S. C., 324; 86 S. C., 66; 87 S. C., 18. *Verdict a correct one and should not be disturbed for technical defects:* 78 S. C., 73; 93 S. C., 295; 98 S. C., 474; 115 S. C., 367; 93 S. C., 420. *Burden on appellant to show harmful error:* 82 S. C., 274; 92 S. C., 354; 98 S. C., 289; 94 S. C., 85; 91 S. C., 507; 108 S. C., 472; 108 S. C., 397; 110 S. C., 517. *General objection to testimony no sufficient:* 59 S. C., 232; 53 S. C., 80; 41 S. C., 120; 94 S. C., 324; 86 S. C., 66; 87 S. C., 18. *Even if inadmissible, appellant must show prejudicial error:* 78 S. C., 352; 86 S. C., 103; 105 S. C., 70; 89 S. C., 134; 90 S. C., 425. *Breach of contract does not constitute fraud:* 87 S. C., 331. *No coercion of jury to urge agreement:* 86 S. C., 229; 86 S. C., 17; 87 S. C., 331; 74 S. C., 102; 45 S. C., 659.

April 10, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action to recover damages in the sum of $600,000.00 on account of alleged fraudulent acts and misrepresentations of certain of the defendants whereby plaintiff was induced to sign an instrument for the sale of certain stock in Glenn-Lowry Manufacturing Company, with option to repurchase in six months, which stock plaintiff was unable to redeem on account of an alleged conspiracy among the defendants whereby the output of the mill was decreased, the manufacturing cost thereof increased, and the value of the stock so depreciated as to prevent plaintiff from redeeming the same within the six months' period provided by the written instrument.

The plaintiff, a citizen of Union County, was the builder of the Glenn-Lowry Cotton Mill at Whitmire in Newberry County, of which he was for a number of years the president and the owner of a large majority of the stock. In the year 1917, and for some time prior thereto, the mill was in financial distress, and the plaintiff was having difficulty in providing funds with which to operate. Certain of the defendants are members of the brokerage and commission firm of John P. Stevens & Co., of New York City. This firm had represented the Glenn-Lowry Mill as selling agents from about 1910 until 1915, and during that period had advanced the mill large sums of money. In 1915, Stevens & Co. declined longer to carry the account as selling agents, and requested that the indebtedness be reduced to $500,000. An arrangement was made whereby the selling account was transferred to Harding Tilton Company, and the indebtedness of the mill to Stevens & Co., to the amount of $500,-000.00, was assumed by the plaintiff personally, who secured the account by a pledge of stock in the mill. Between 1915 and 1917 this indebtedness of the plaintiff to Stevens & Co. was not reduced. Prior to 1917 the plaintiff had become indebted to the Southern Power Company and to various other creditors in the sum of about $200,000.00, which

debts were evidenced by notes, secured by plaintiff's stock in the Glenn-Lowry Manufacturing Company.

Early in 1917 the Southern Power Company, holder of a past-due note for $110,000.00, secured by 7 per cent. preferred stock of the par value of $175,000.00, began pressing for payment. Some effort seems to have been made by the defendant, J. P. Stevens, to form a creditors' committee to take charge of the plaintiff's affairs and work matters out by operating the mill under the virtual direction of the creditors. The plan was not acceptable to the Southern Power Company, and does not seem to have been favored by the plaintiff. Finally, after negotiations extending over a period of several weeks, on May 2, 1917, at a conference in New York between the plaintiff, one or two other officers of the mill, and the plaintiff's personal attorney, George S. Mower, Esq., on the one hand, and the defendant, J. P. Stevens and others representing various creditors, on the other side, the plaintiff signed an agreement to relinquish the management of the mill property, and to transfer and convey outright to his creditors the stock pledged to secure his loans and to transfer and deliver to the Glenn-Lowry Manufacturing Company all of his unpledged stock to secure his personal indebtedness to the mill, subject to the condition that he have a right to pay the debts and redeem the stock within six months. For the stock so transferred, the plaintiff was to be fully and finally discharged of all liability on account of said debts. The evidence leaves little room for doubt that, if the obligations of the plaintiff had been foreclosed by a sale of the pledged stock on May 2, 1917, the stock would have brought only a small proportion of the indebtedness and that as a result of such course of action plaintiff would not only have lost his stock, but would have been left with an outstanding personal liability for an unpaid balance in a large amount.

Pursuant to this agreement the plaintiff shortly thereafter vacated the office of president of the mill, and the defend-

ants secured the services in that capacity of Alexander Long, a prominent mill executive of Rock Hill, S. C. The plaintiff failed to redeem his stock within the six months stipulated in the written agreement. Afterward, the date not appearing, this action was brought in the County of Newberry · in which the plaintiff had lived and operated his manufacturing plant for a period of 17 years, and, after a trial before Hon. Edward McIver, Circuit Judge, and a jury, extending over a period of one week, the jury returned a verdict for the defendants. From judgment on verdict the plaintiff appeals upon exceptions that raise but three points.

The first (exception 1) is directed to alleged error of the trial Judge in admitting over objection the testimony of the defendant, B. H. Herren, to the effect that A. P. Heard was instrumental in causing the strike at Whitmire, the error specified being that "said testimony was hearsay evidence, based on conversations and general talk," and was irrelevant. Herren was master mechanic and Heard superintendent of the mill when Long took charge as president. Shortly after Long's assumption of the management, there had been a strike of certain hands, called the "Stafford" weavers. It was plaintiff's contention that this strike had been brought about by Long for the purpose of reducing the volume of production and thereby depreciate the value of his stock, in pursuance of a conspiracy between Long and Stevens and others to prevent plaintiff from financing the redemption of his stock. In meeting that contention, defendants undertook to show, among other things, that the strike followed a necessary readjustment by President Long of the wage scale of operatives under war conditions. Mr. Heard, who had been superintendent under the plaintiff's management, and who appeared as a witness for him at the trial, did not approve of the new scale as to the Stafford weavers, and some friction between him and Long ensued. The contention was made by defendants that the strike was as much or more at-

tributable to the attitude of Heard as superintendent in fail-
ing properly to support the president than to the new wage
scale or policy, and that the belief or opinion among the
employees as to Heard's attitude was responsible, or par-
tially responsible, for bringing on the strike.   Directed to
that contention, the witness, Herren, the master mechanic
at the time of the strike, was asked and permitted to an-
swer this question:

"Based on what you heard in your conversation with
them, and the general talk you heard around the mill vil-
lage, what was the opinion of the mill employees as to who
was responsible for that strike."

The answer was to the effect that the opinion was that Mr.
Heard was instrumental in it by reason of the known fact
"that he did not get along with Mr. Long."   The only
ground specified for the objection to this testimony was
that the witness, Herren, "was not one of the strikers."

We do not think Heard's responsibility for, or con-
nection with, the strike could properly be established
by reputation or public opinion among the mill em-
ployees, and, if offered for that purpose alone, the testimony
was clearly inadmissible.   See, generally, *Brown v. Foster*,
41 S. C., 122; 19 S. E., 299.  *State v. Green*, 40 S. C.,
328; 18 S. E., 933; 42 Am. St. Rep., 872.  *Munro v. Long*,
35 S. C., 360; 14 S. E., 824; 28 Am. St. Rep., 851.  *Rogers
v. Railway Co.*, 31 S. C., 388; 9 S. E., 1059.   But it was
not inadmissible upon the ground called to the attention
of the trial Judge.   Obviously, whether Herren was one
of the strikers or not did not affect the essential character
of the testimony or render it the more or less competent
as judicial proof of Heard's responsibility for the strike.
But the testimony was apparently admitted by the Circuit
Judge, not as competent evidence of Heard's connection
with the strike, but merely as proof of the independent fact

or circumstance that such a rumor or opinion had gained
currency and might have influenced the action of the strik-
ers. The broad inquiry was as to the good faith of Long's
management with particular reference to the cause of this
strike. Strikes, riots, mutinies, the group action of men
to almost any end, may usually be attributed to and explained
by some current opinion or belief, operating upon the crowd
psychology, and influencing to, and culminating in, the con-
certed action of the group. In determining the immediate
cause of such an outbreak, the truth or falsity of the general
opinion or belief that influenced the participants is beside the
mark. Thus, the cause, or one of the causes, of the Indian
Mutiny of 1857 is now universally attributed to a belief cur-
rent among the Sepoy soldiery to the effect that the car-
tridges for the new rifle recently introduced were greased
with the defiling fat of cows and pigs. Upon a supposed
judicial inquiry into the exciting cause of that rebellion,
conducted months or years afterward, whether that opinion
or belief was founded in fact would have been immaterial;
but we apprehend that the testimony of a soldier, based
upon the expressions of his fellow soldiers, to the effect that
such an opinion or belief did prevail in the native army
among those who participated in the rebellion would not
have been incompetent as an infringement of the rules
against either hearsay or opinion evidence. So here, in the
view that the testimony offered could not prejudice Heard,
who was not a party to the action, and might throw some
light on the springs of action of the group that walked out,
and in further view of the nature of the issues joined, ne-
cessitating the allowance of wide latitude in the reception
of circumstantial evidence, and of the broad discretion
vested in the Circuit Judge as to the relevancy of testimony,
we are not prepared to rule that even the technical objections
to this testimony, urged for the first time in this Court,
are valid. See 12 *Corpus Juris*, 634, § 227; *Suber v. Parr
Shoals Power Company*, 113 S. C., 317; 102 S. E., 335;

*Lumber Co. v. Edwards,* 103 S. C., 391; 88 S. E., 537. In any view, we are of the opinion that the charge of prejudicial error in the admission of this testimony has not been sustained, and the exception thereto directed must be overruled.

Appellant's second point (Exception 2), imputes 3, 4 error to the trial Judge in charging one of defendant's requests as follows:

"Deceit or fraudulent representation, in order to be actionable, must relate to existing or past facts, and the fact that a promise made in the course of negotiations is never performed does not in and of itself constitute nor evidence fraud. A mere breach of a contract does not constitute fraud."

It is contended that, in giving this instruction, the Circuit Judge "told the jury as to what was evidence of fraud and what was not evidence of fraud," and thereby charged on the facts. The charge embodied the well-established general proposition of law (26 C. J., 1087; *Holmes v. Caldwell,* 10 Rich., 311; *Caldwell v. Duncan,* 87 S. C., 331; 69 S. E., 660), that fraud cannot be predicated upon an unfulfilled promise as to future events alone.

"The mere violation of a contract will not support an allegation of fraud." *Caldwell v. Duncan,* 87 S. C., 339; 69 S. E., 663.

It was doubtless in recognition of that principle that plaintiff did not rest his cause of action upon the mere breach of the alleged promise to extend the option. If the breach of that promise did not of itself constitute fraud, such breach was not of itself evidence of fraud. The plaintiff's contention that such breach was in itself evidence of fraud, when considered in connection with other facts and circumstances tending to establish a conspiracy, was fully and fairly safeguarded by the following instruction in the general charge:

"A future promise is not fraudulent, unless such a future promise was part of a general design or plan existing at the time, made as part of a general scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury."

Again, in response to an inquiry from the jury, the Judge very favorably and clearly stated and illustrated the law applicable to the facts from plaintiff's standpoint. Even in the possible view that the charge complained of, standing alone, might have been misleading, we think the plaintiff received the full benefit of all that he was entitled to by way of qualification of the instruction to which exception is taken. So considered, the charge clearly is not open to valid criticism, and the exception must be overruled.

The appellant's third point (Exceptions 3 and 4), is directed to the contention that the trial Judge exerted such undue and improper pressure on the jury as to coerce a verdict. The trial of the case appears to have consumed about a week. The jury remained out all of one night. The next morning they were brought in by order of the Court and the foreman reported that they were "hopelessly at odds," but expressed no desire on the part of the jury to be discharged. Thereupon the Judge addressed to the jury certain general remarks as to their official duty in making a conscientious effort to arrive at the truth and find a verdict, and advised them that, in view of the "seriousness of the case, the time lost, and the interest involved" he did not feel that he would be justified in excusing them until they had made further effort. It was in the course of these remarks that the Judge used the language complained of, which is as follows:

(1) "I know this jury measures up in intelligence with any you can get to pass on this case. If you can't decide it, who can you hope to get to decide it? Without meaning any reflection on you at all, the fact that you fail to do this work is just as analogous to a situation in time of war,

when a regiment is called on to perform a certain duty and they say, 'We can't do it; you will have to get some one else.' "

(2) "Is it possible that the truth is so elusive that twelve men, after deliberating, can't find what the truth is? If that were true we will have practically lapsed back into the ages where we came from."

Perhaps the analogy between the duty of a jury as to reaching a verdict and that of a regiment in time of war called upon to perform a service, is not so close as to make it an altogether happy illustration for general use in admonishing juries. But the foregoing portions of Judge McIver's address constituted only a small part of what was on the whole an admirably impartial, appropriate, and courteous appeal to the jury to make every reasonable effort faithfully to discharge the duty imposed upon them. There was no suggestion of a threat as to keeping the jury together for a definite or indefinite time; no suggestion of an order or command that they must agree; no emphasis upon or reference to any phase of the facts in issue; no exhortation that did not redound as fully to the benefit of the plaintiff as of the defendants; no objections as to the alleged coercive nature of the Judge's remarks was interposed at the trial; and, in the light of long experience as a trial lawyer, the writer hazards the surmise that this appeal of the courtly McIver was not unfavorably regarded by plaintiff's counsel at the time of its deliverance. Following these remarks, at the request of the foreman and of plaintiff's counsel Judge McIver again charged the jury as to certain points of law. To this charge the plaintiff takes no exception. The Judge's appeal can be construed as nothing more nor less than strong moral suasion to do the right. The substance of appellant's criticism is that it was too strong. We are not prepared to approve the general proposition that pure moral suasion to discharge an important duty in a righteous way may be so strong

as to constitute error of law.   Possibly a case might arise in which the nature of the issues and the tenor of the evidence would make such an appeal point all one way so unerringly as to give the Judge's utterance a partisan cast; or, possibly, under conditions of public stress, such exhortation attuned to popular clamor, might transcend the limits of judicial propriety.   But the case at bar is not such a case. The record discloses no ground for attributing to the Judge's remarks a partisan purpose or effect, and no ground for inferring that there was anything in the environment of the jury that would lend undue or coercive weight to the Judge's address.   We are, therefore, clearly of the opinion that the expressions complained of, considered either from the standpoint of substance or of setting, may not be pronounced such abuse of the trial Judge's discretion as will constitute reversible error of law.   See *Harper v. Abercrombie,* 115 S. C., 365; 105 S. E., 749. *Dover v. Lockhart Mills,* 86 S. C., 229; 68 S. E., 525.   *State v. Jones,* 86 S. C. 17; 67 S. E., 160.   *Caldwell v. Duncan,* 87 S. C., 331; 69 S. E., 660.   *Nickles v. Railway,* 74 S. C., 102; 54 S. E., 255.   *State v. Drakeford* (S. C.), 113 S. E., 307.

For the reasons stated, the exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN concur.

MR. JUSTICE WATTS did not sit.

MR. JUSTICE FRASER: I dissent.   I think the illustration as to the similarity of the duties of a regiment of soldiers and a jury was unfortunate and misleading.   The more courteous the Judge, the greater the harm.   Unquestionably, the soldiers who say "We can't take a position we are ordered to take," are worthy of severe criticism and even punishment.   It is their duty to die trying.   It may be the duty of a jury to disagree.   The verdict of a jury must be unanimous.   Even this Court has been known to file

opinions which were not unanimous. Even where opinions are four to one, and a failure of a unanimous opinion causes thirteen Circuit Judges to leave their Courts all over the State and come to Columbia, at great expense and delay to the judicial business of the State, still it is the duty of a single Justice to adhere to his honest opinion, and let the consequences be what they may.

The jurors, who are the judges of the facts, have equally as solemn a duty to stand by his convictions. This jury, after an all night session, said they could not agree. They are then told by a polite and learned Judge that it is their duty to agree. How shall they agree? Manifestly some one must give up his convictions. If there was testimony enough to carry the case to the jury, then there was testimony about which honest and intelligent men might disagree, and if there is an honest disagreement, then a mistrial may be had without any shirking of duty by the jury.

For these reasons I dissent.