## STATE v. RICE.

1. EVIDENCE—PRACTICE—TRIAL JUSTICE.—A trial justice's docket, which he is required by law to keep, is the best evidence of proceedings before him in a civil or criminal case.
2. IBID.—HEARSAY—A statement by a prosecutrix to a third party that another had whipped her, is hearsay, and incompetent.
3. IBID.—REPUTATION—PRACTICE.—Testimony of a witness' good character is inadmissible in reply to testimony tending to show that he has made contradictory statements.
4. IBID.—CONSPIRACY.—After a conspiracy is ended by the accomplishment of the common enterprise, the declarations of one of the conspirators is not evidence against the others. Such statements cannot be admitted except upon proof of conspiracy.

Before WITHERSPOON, J., Union, October, 1896. Reversed.

Indictment against A. G. Rice, I. C. Rice, Ed. Rice, Aaron Rice, and Gaines Macbeth for assault and battery with intent to kill. Convicted of high and aggravated assault and battery, and after sentence the defendants appealed.

*Messrs. Sims & Dixon* and *Munro & Munro,* for appellant, cite: *Admission of trial justice docket:* 7 S. C., 224. *Testimony of good character in reply inadmissible:* 12 Rich., 654.

*Solicitor T. S. Sease* and *Mr. O. L. Schumpert,* contra. *Oral argument.*

June 23, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The defendants were indicted for assault and battery with intent to kill, and the jury having found the defendants guilty of a high and aggravated assault and battery, they were sentenced accordingly. From this judgment the defendants appeal upon the several grounds set out in the record, which will be considered in their order, grouping, however, those which present the same question.

The allegations on the part of the State, to which the

testimony was directed, was that on the 7th of May, 1896, late in the night of that day, a party of disguised men took the prosecutrix, one Mary Ann Wallace, from her house into the woods, and there inflicted upon her a severe whipping; and the only question in the case seemed to be whether the defendants were the persons who committed this outrage.

One Rufus Farr was offered as a witness for the prosecution, and when he came to the book to be sworn, counsel for defendants interposed an objection that the witness was incompetent to testify, on the ground that he had been convicted of larceny before a trial justice; and offered to introduce the book kept by the trial justice to prove that he had been convicted of an infamous offense. Upon objection from the solicitor that the book was not the highest and best evidence, but that the original records—the warrant and other papers—must be produced, or their loss established, the Circuit Judge, his Honor, Judge Witherspoon, sustained the objection, holding that the book of the trial justice was only secondary evidence, and could not be received, in the absence of any satisfactory showing as to the loss of the original papers, and he therefore allowed the witness, Farr, to testify. This ruling is made the basis of the first, second, and sixth exceptions, which present the question whether the book of the trial justice was primary or merely secondary evidence of the fact that the witness offered had been convicted of the offense of larceny. This ruling of the Circuit Judge in this case is in conflict with the authorities, and cannot, therefore, be sustained. In *Cherry* v. *McCants*, 7 S. C., 224, it was held that the book which a trial justice is required by statute to keep, is the highest and best evidence of proceedings had before him, either in criminal or civil cases. That was an action for malicious prosecution in a trial for petty larceny before a trial justice, in which it, of course, became necessary to prove the proceedings before the trial justice, and it was there held that the book was the best evidence of such proceedings. In the opinion in that case we find the following

language: "As the court of a trial justice has no clerk, and
as he himself is the keeper of the papers connected with his
office, not required to be turned over to the solicitor for the
Circuit in which he resides for further action, to put at rest
all doubts as to the mode in which the proceedings in his
court may be offered in evidence in any of the Courts where
proof of such proceedings may be competent, we are pre-
pared to say that his book, so required by law to be kept,
either relating to criminal or civil business had before him,
as the case may be, shall be sufficient." That case had been
recognized and followed in at least two subsequent cases—
*Barron* v. *Dent*, 17 S. C., p. 80, and *Caulfield* v. *Charleston*,
19 S. C., 601. Indeed, the Court, in *Cherry* v. *McCants*,
simply adopted the construction which had been placed by
the former Court of Appeals upon a provision in the act of
1839 identical in terms (so far as this particular matter is
concerned) with our present statute upon the subject (1 Rev.
Stat. 1893, sec. 892), in the case of *Etters* v. *Etters*, 11 Rich.,
413. It is true, that the case last cited was subsequently
modified in the case of *Traylor* v. *McKeown*, 12 Rich., 253;
but only to the extent of allowing a constable or other officer
when sued for a trespass in enforcing an execution issued by
a magistrate, to defend himself by introducing the execution
under which he acted. In view of these authorities, we are
compelled to sustain the first, second, and sixth exceptions.

The third exception imputes error to the Circuit Judge
in permitting a witness for the State, Ed. Wallace, to testify
that the prosecutrix told him the morning after the
whipping who it was whipped her. This was clearly
hearsay and incompetent, and this exception must be
sustained.

The fourth exception alleges error in permitting the so-
licitor, against the objections of defendants, to prove in reply
by sundry witnesses the good character of the witness, John
D. Norris, whose general character had not been assailed in
the testimony for the defense, though testimony had
been offered to show that said Norris had made con-

tradictory statements, and in that way it was sought to discredit his testimony.    Under the general rule, as laid down by standard text-writers on evidence, such testimony would have been competent; but the rule in this State is otherwise.    See *Chapman* v. *Cooley*, 12 Rich., 654, recognized in the recent cases of *State* v. *Jones*, 29 S. C., 230, and *State* v. *Wallace*, 44 S. C., at p. 361.    The syllabus in the case of *Chapman* v. *Cooley*, which correctly represents the point decided, reads as follows: "The character of a witness can be defended by evidence only when it is directly assailed by evidence; when, therefore, a witness is attacked by evidence of previous statements in conflict with his deposition, evidence of his general good character is inadmissible."    In that case, that distinguished jurist, Mr. Justice F. H. Wardlaw, after showing that the rule as laid down by the text-writers, and apparently approved by Earle, J., in *Farr* v. *Thompson*, Cheves, 37, is based upon a misconception of the case of *Rex* v. *Clarke*, 2 Starke Rep., 241, upon which the rule was based, proceeds to draw a distinction between the *character* of a witness and the *credit* which should be allowed his testimony, and says: "Every assault on the credit of a witness does not involve the imputation of perjury to him nor, indeed, any reflection on his reputation," and proceeds to lay down as the true rule that which is stated in the syllabus copied above.    Common experience shows that the distinction thus taken is well founded, for there are persons of unimpeachable character, whose testimony is not always entitled to very much credit, arising from carelessness, imperfect memory, or other causes not involving any want of character.    At all events, this being the rule in this State, as settled by the highest authority, and recently recognized, it must be followed, and hence the fourth exception must be sustained.

The fifth exception, which imputes error in refusing to allow the witness, Gordon Williams, to answer the question whether Rufus Farr, the witness above spoken of, had an *alias* or not, and whether Rufus Farr and Rufus Salter were

not one and the same person, loses all of its practical impor-
tance in view of the fact that Rufus Farr when on the stand
admitted that he was sometimes called Rufus Salter. Be-
sides, if this witness was incompetent to testify, by reason
of his conviction of larceny, which, as we have seen, was
sufficiently shown by the book of the trial justice, the
question becomes immaterial.

The only remaining question is that presented by the
seventh exception, in which the error imputed is in admit-
ting the declaration or admissions of John Rice to the wit-
ness, Norris. John Rice was not a party to the case, and,
therefore, his declarations or admissions were clearly
hearsay, and, therefore, incompetent. The only way
in which his declarations or admissions could become
competent was by first showing that the offense charged was
committed in pursuance of a conspiracy to which John Rice
was a party, and that such declarations or admissions were
made while such conspiracy was in progress. Now, in the
first place, there does not seem to be any evidence of any
such conspiracy to which John Rice was a party; but even
conceding that there was, it is clear that these declarations
or admissions were inadmissible, for the witness, Norris, him-
self says that they were made after the object of the alleged
conspiracy was accomplished—after the woman had been
whipped—and this is sufficient to show that such declara-
tions were incompetent. See *State* v. *Green*, 40 S. C., 328,
where it was held that after a conspiracy is ended by the
accomplishment of the common enterprise, the declarations
of one of the conspirators is not evidence against the others.
The seventh exception must likewise be sustained.

The judgment of this Court is, that the judgment of the
Circuit Court be reversed, and that the case be remanded to
that Court for a new trial.