2445

The STATE, Respondent v. Michael D. JONES, Appellant.

(466 S.E. (2d) 733)

Court of Appeals

*Assistant Appellate defender Robert M. Pachak,* of *SC Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Assistant Deputy Attorneys General Donald J. Zelenka and Salley W. Elliott,* and *Assistant Attorney General Charles F. Reid,* Columbia; and *Solicitor Joseph J. Watson,* Greenville, *for respondent.*

Heard Dec. 7, 1995.

Decided Jan. 22, 1996.

CONNOR, Judge:

A jury convicted Jones of first-degree burglary, kidnapping, and armed robbery. The judge sentenced him to thirty years for burglary, thirty years for kidnapping, and twenty-five years for armed robbery. He appeals a portion of the solicitor's closing argument and the trial court's use of an *Allen,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, charge. We affirm.

Two separate incidents underlie the indictments in this case. The first was an attempted robbery at a gas station in Greenville around 1:45 a.m. on September 17, 1993. The jury acquitted Jones of that charge. The second incident involved a robbery, burglary, and kidnapping that also took place in the early morning hours of September 17. The victim, Chris Achille, testified two men approached him as he pulled into the parking lot at his apartment complex at approximately 2:00 a.m. First, a man asked him for his money and threatened to kill him. The man appeared to have a gun. Achille told the man he had no money. A second man then approached and both men forced Achille to let them into his apartment. The men stole gold necklaces, a rifle, a VCR, and a Sega game. Finally, the two men forced the victim into their car, drove him around town, then let him out.

The next day, Achille identified the first man, Michael Sullivan, from a photographic lineup. Achille identified the second man, Jones, in court. Sullivan, who had previously pleaded guilty to the charges, testified for the state. He testified he used a cigarette lighter pistol in both of the incidents. He stated another person, whom he did not name, accompanied him.

Jones presented an alibi defense. All of the alibi witnesses testified Jones spent the evening with them at his ex-girl-friend's home, eating spaghetti and making a rap demo tape. Jones alleged he then went to bed for the night, and did not leave until the following morning.

Jones first argues the trial court erred in overruling his lawyer's objection to a portion of the solicitor's closing argument in which the solicitor made the following reference to the O. J. Simpson case:

> [Solicitor:] [I]f you believe Chris Achille, who doesn't have any reason to lie to you, a substitute teacher who works at the paper, no, you don't need fingerprints. No, you don't need DNA. OJ's case, they don't have eyewitnesses so they need—
>
> [Defense attorney:] Your Honor, I'll object to that. That has nothing to do with this trial.
>
> [The Court:] I'll allow it. I think that's a fair comment. Go ahead.
>
> [Solicitor:] OJ's case they don't have eye witnesses so

they rely on circumstantial evidence. We've got eye witnesses and we put them up before you and they said this defendant right her[e], ladies and gentlemen (indicates), did it. He wasn't eating spaghetti. He wasn't rapping and he wasn't asleep. He was out at 1:45 with me (indicates) at the Spinx Station and he was out at two o'clock, from two o'clock to two thirty with me (indicates).

In making closing arguments, attorneys should stay within the record and its reasonable inferences. 316 S.C. 445, 450 S.E. (2d) 582 (1994); *State v. Linder*, 276 S.C. 304, 278 S.E. (2d) 335 (1981). Therefore, a comparison by the state of this case to a totally unrelated case was improper. However, improper statements must materially prejudice the right of the defendant to obtain a fair and impartial trial. *State v. Cannon*, 229 S.C. 614, 93 S.E. (2d) 889 (1956); *see also State v. McDaniel*, 320 S.C. 33, 462 S.E. (2d) 882 (1995) (reversing and remanding for a new trial case in which solicitor repeatedly urged jurors to put themselves in the victim's place, thus appealing to their prejudice and passion). The duty is upon the defendant to prove prejudice. *See State v. Gathers*, 295 S.C. 476, 369 S.E. (2d) 140 (1988), *aff'd*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed. (2d) 876 (1989) (finding no error where appellant failed to show any prejudice from nondisclosure of certain evidence). We find no prejudice here.[1]

Jones next argues the trial judge erred in giving the jury an *Allen*[2] or "dynamite" charge. After approximately three hours' deliberation, the jury sent the judge the following note:

We are hung 11 to 1 and starving. May we go to lunch and think things through. We also need to calm down so may we walk to Main? Thanks.

After the jury returned from lunch the trial judge gave the *Allen* charge. The objectionable portions of the charge urged dissenting jurors to consider whether their positions were reasonable in light of the judgment of the majority. Jones argues the charge was unduly coercive because the trial judge

---

[1] We caution the bar, however, the references to any highly publicized case could potentially be prejudicial.

[2] *Allen v. United States*, 164 U.S. 492,s 17 S.Ct. 154, 41 L.Ed. 528 (1896). An *Allen* charge is used to encourage a deadlocked jury to reach a verdict.

knew the numerical alignment of the jury. However, nothing in the record indicates the judge know how the jury was aligned concerning guilt or innocence. Furthermore, the judge also told the jury, as part of the *Allen* charge, that "the verdict to which a juror agrees must, of course, he his or her own verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusion of his or her fellow jurors." We have carefully reviewed the entire charge and, taken as a whole, do not find it coercive. *State v. Dawson,* 203 S.C. 167, 26 S.E. (2d) 506 (1943) (absent coercion, it is the duty of a trial judge to urge the jury to reach a verdict).

Affirmed.

SHAW and HEARN, JJ., concur.